In the Matter of the Claim of James H. Norris, Appellant, against The New York Central Railroad Company, Respondent.

State Industrial Board, Respondent.

**Workmen's compensation — master and servant — workman killed during temporary cessation of work — assumption that he was killed by an accident arising out of and in course of employment.**

The fact that an employee was not actually at work when an accident occurred does not impugn a finding by the State Industrial Board that he was in the course of his employment when injured, where due to the nature of his employment there was a temporary cessation of work. During the interim the workman was not obliged to remain a prisoner in the place where he was working, and, where it appears

that he may have been at the place of the accident for legitimate purposes of the employment and there was no proof that he was there for a contrary purpose, the Industrial Board was justified in assuming or inferring that he continued in his employment and was killed by an accident arising out of and in the course of his employment.

*Matter of Norris* v. *N. Y. C. R. R. Co.*, 220 App. Div. 359, reversed.

(Argued October 4, 1927; decided November 22, 1927.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered May 7, 1927, reversing an award of the State Industrial Board, made under the Workmen's Compensation Law, and directing a dismissal of the claim.

*Frederick J. Flynn* and *Charles R. Mullin* for appellant. The Appellate Division erred in reversing the decision and award of the State Industrial Board and in dismissing the claim as there was evidence to sustain the findings that the injuries and death of the decedent were the result of an accidental injury arising out of and in the course of his employment. (Workmen's Compensation Law, § 20; *Benjamin* v. *Rosenberg Bros.*, 180 App. Div. 234; *Cohen* v. *Ashford Plumbing Co.*, 216 App. Div. 263; *Di Salvio* v. *Menihan Co.*, 225 N. Y. 123; *Heitz* v. *Ruppert*, 218 N. Y. 148; *Noble* v. *N. Y. C. & H. R. R. R. Co.*, 20 App. Div. 40; 161 N. Y. 620; *Fordham* v. *Gouverneur*, 160 N. Y. 541; *Mullen* v. *Schenectady R. Co.*, 214 N. Y. 300; *Smith* v. *Oesterheld & Sons*, 189 App. Div. 384; 229 N. Y. 525; *Driscoll* v. *Gillen & Sons*, 187 App. Div. 908; 226 N. Y. 568; *Chludzinski* v. *Standard Oil Co.*, 176 App. Div. 87; *Graffee* v. *Art Color Printing Co.*, 191 App. Div. 669; *Smith* v. *Bartle Corp.*, 189 App. Div. 426; 228 N. Y. 564.)

*Robert E. Whalen* for respondent. Norris' accident did not arise out of and in the course of his employment. (*Matter of Glatzl* v. *Stumpp*, 220 N. Y. 71; *Matter of Saenger* v. *Locke*, 220 N. Y. 556; *Matter of Scholtzhauer* v. *C. & L.*

*Lunch Co.,* 233 N. Y. 12; *Matter of McCarter* v. *La Rock,* 240 N. Y. 282; *Markowitz* v. *Nat. Hardware Co.,* 213 App. Div. 461; *Matter of Di Salvio* v. *Menihan Co.,* 225 N. Y. 123; *Matter of Leonbruno* v. *Champlain Silk Mills,* 229 N. Y. 470; *Matter of Clark* v. *Voorhees,* 231 N. Y. 14; *Matter of McInerney* v. *B. & S. R. R. Corp.,* 225 N. Y. 130; *Heater* v. *Erie R. R. Co.,* 210 App. Div. 497.)

KELLOGG, J.   The workman, James H. Norris, for whose death this claim was filed, was employed to unload cans of milk from railway cars, placed in the yard of his employer, the New York Central Railroad Company, and to deliver the same on. board motor trucks of consignees.   The yard was situated in New York city between Twelfth avenue on the west and Eleventh avenue on the east, and was bounded on the north by Thirty-fourth street and on the south by Thirty-second street.   Two private roadways, designated respectively "A" and " B," crossed the yard from east to west, connecting Eleventh and Twelfth avenues.   Roadway A was about one hundred feet to the north of roadway B and was separated therefrom by six lines of tracks, running easterly and westerly.   Roadway A swung down to meet roadway B at Eleventh avenue.   At about the point of convergence, on the edge of Eleventh avenue, stood a flag shanty. This shanty was warmed by the heat from a stove.   A. short distance to the south, on the westerly edge of Eleventh avenue, was a yardmaster's office.   In this building there was a toilet.   On the night of October 1st, 1925, the workman Norris was assigned to unload milk cans from a car placed on a railway track just north of roadway A and about 500 feet west of Eleventh avenue. Norris came to work at about eleven o'clock P. M.   He first checked up on the number of cans, as was his duty, and reported the count correct to his foreman.   He then proceeded to deliver cans on board a consignee's motor truck.   It is conceded that he made one delivery

of cans; that other deliveries remained to be made; that he could make no more until the motor trucks of other consignees arrived. · At about one o'clock A. M. Norris was seen walking on roadway A easterly toward Eleventh avenue. Shortly afterwards his body was discovered on roadway B, about 500 feet west of its convergence with roadway A. Norris was in a dying condition and shortly afterwards died. The proof justified the conclusion that ` Norris had been struck at Eleventh avenue, where the two roadways converged, by a fast-moving motor truck going west on roadway B; that his body had been carried on the fender of the truck until, when the truck circled back, it was deposited on roadway B at the point where it was found. The question arises whether the State Industrial Board justly found, under the circumstances stated, that Norris was in the course of his employment when the motor truck ran him down.

The fact that Norris was not *actually* at work when the accident occurred does not impugn the finding; nor does the fact that he was, at the time, absent from the precise spot where his work must have been performed. Due to the nature of his employment, there was a temporary cessation of the work. Norris was obliged to suspend until such time as further motor trucks, to which he could make delivery, might arrive. During the interim he was not required to remain a prisoner caged in the freight car containing the cans to be unloaded. It has been held that a laborer sitting in the doorway of his employer's plant during the idle noon hour is in the course of his employment. (*Matter of Domres* v. *Syracuse Safe Company*, 240 N. Y. 611.) The same holding has been made in the case of a night watchman who leaves his box and retires to a shanty to cook and eat his food (*Morris* v. *Lambeth Borough Council*, 8 W. C. C. 1); of a lighterman employed to pump out a stranded barge who, while waiting for the tide to float the barge, that he may embark upon it, attempts to board a nearby boat, in order to

obtain a rest, and is thereby·injured (*May* v. *Ison*, 7 B. W. C. C. 148); of a workman, employed to reconstruct telegraph lines, who takes refuge from a storm under railway cars standing on a siding, and is injured when a freight engine moves the cars (*Matter of Moore* v. *Lehigh Valley R. R. Co.*, 169 App. Div. 177; affd., 217 N. Y. 627); of a locomotive engineer who temporarily leaves his engine to go to his boarding house nearby and is killed while crossing the railway tracks (*North Carolina R. R. Co.* v. *Zachary*, 232 U. S. 248). The workman Norris, when struck by the motor truck, may have been on his way to the flag shanty, to warm himself before the stove, or to the yardmaster's office, to use the toilet. Again, he may have gone to the place where he was hit in order to watch and wait for the trucks of consignees, upon the arrival of which the resumption of his work depended. This was the common practice of " milk handlers " and was known to be such by their superintendent. Under the cases cited, upon any of the assumptions made, Norris would have been in the course of his employment when hit by the truck.

Was the Industrial Board justified in finding that Norris journeyed to Eleventh avenue animated by one of the purposes indicated, rather than by a purpose personal to himself? There is a well-recognized common-law rule that a relationship, such as that of principal and agent, once shown to have existed, may be inferred or presumed to have continued until its non-existence has been established. (1 Greenleaf on Evidence [16th ed.], secs. 41, 42; Wigmore on Evidence, sec. 2530.) The presumption has been applied to the relationship of master and servant in two well-considered English cases (*Astley* v. *Evans & Co., Ltd.*, 4 B. W. C. C. 209, and *Rigling* v. *Minister of Munitions*, 14 B. W. C. C. 1). In the *Astley* case a train of freight cars, pushed by an engine, overtook another train on the same rails, and the two trains ran buffer to buffer. A brakeman on the rear train tried to get aboard

the train ahead, but stepped between the buffers and was killed. There was no evidence as to his purpose in trying to board the forward train. However, there was proof that the cars on that train had steps from which to alight, while the cars on the rear train had none, and that by alighting the brakeman might have been enabled to turn a switch, as was his duty. An award for the death of the brakeman was upheld. It was there said by FLETCHER MOULTON, L. J., that " where the workman is engaged in his master's work up to his death, and the last acts that are known are consistent with the continuance of that work, it is for the person who alleges a cessation of his working for his master to prove it." The facts of the *Rigling* case are very similar to those in the case at bar. Rigling was a workman in the employment of a railroad. He was engaged at work on the south side of four sets of railway tracks running from east to west. On the north side of the tracks there was a mess room and a lavatory. Rigling was entitled to go to either of these places during the noon hour. During that hour he did cross the tracks for some purpose unknown. On his return he was struck by a passing train and killed. An award for his death was sustained. Lord STERNDALE, M. R., said that he was troubled by the question whether it was not for the claimant to show that Rigling was making the crossing for some purpose arising out of his employment; that, on the whole, he thought it was not; that under the circumstances " although there may be a gap between that and his death which is not filled up, it should be inferred that he met his death in doing something arising out of the course of his employment." The case of *Smith* v. *Oesterheld & Son* (189 App. Div. 384; affd., 229 N. Y. 525) closely resembles the case at bar. In that case it was the duty of a workman to unload lumber from a railroad car and deliver the same upon motor trucks. He loaded one motor truck and was waiting for other trucks to arrive. During the interim the workman

crossed several railway tracks, going in the direction of a railroad office where there was a telephone. It may have been his purpose to telephone his employer to hurry along the trucks. In the course of his journey he was struck by a train and killed. The award was upheld. The court below said: " There being no substantial evidence to indicate the contrary, it must be presumed that his journey was made to serve his master, and that he was killed by an accident arising out of and in the course of his employment." In our case, the significant points are: Norris was killed during the hours of his working day; there was a temporary cessation of work; the last work performed by Norris was for his master; he was killed in the vicinity where further work by him was to have been performed; he was killed during a recess period; during this period he was within the protection of the law if he had not stepped out of his employment; he may have been at the place of the accident for legitimate purposes of the employment; there was no proof that he was there for a contrary purpose. Under these circumstances, we think the Industrial Board was justified in assuming or inferring that Norris continued in his employment and was killed by an accident arising out of and in the course of his employment.

The order of the Appellate Division should be reversed and the award of the State Industrial Board affirmed, with costs in this court and in the Appellate Division.

CARDOZO, Ch. J., POUND, CRANE, ANDREWS, LEHMAN and O'BRIEN, JJ., concur.

Ordered accordingly.