In the Matter of the Claim of ANNA EMERICK, Respondent, against DALE'S MOTOR TRUCK SERVICE, INC., and Another, Appellants. STATE INDUSTRIAL BOARD, Respondent.*

Third Department, November 14, 1933.

*Leonard & Cass* [*John S. Leonard* of counsel], for the appellants.

*Ryan & Heffern*, for the claimant, respondent.

*John J. Bennett, Jr.,* Attorney-General [*Joseph A. McLaughlin* and *John R. O'Hanlon, Assistant Attorneys-General,* of counsel], for the respondent State Industrial Board.

HILL, P. J. As the truck approached the witness Wilcox it was moving in a normal way following a usual course along the highway.

After deceased fell, it was brought to a normal stop. These facts will sustain a finding that Kelly, the second driver, had moved over into the driver's seat and that Emerick, to save the time of a stop, was going over the hood to take his place on the right. The circumstances dispute Kelly's assertion that he was sleeping until just prior to Emerick's fall. However, an award would be proper in this case if we adopt Kelly's version that he was sleeping, but it probably would be necessary to remit the case to give the Board opportunity to consider the making of a corresponding finding of fact. When Kelly last saw Emerick he was working, and there is a presumption that he continued. (*Norris* v. *N. Y. C. R. R. Co.*, 246 N. Y. 307.) Nothing in Emerick's conduct indicated an intention to abandon the truck. The fact that his act was highly negligent and careless does not prevent an award.

RHODES, BLISS and HEFFERNAN, JJ., concur; McNAMEE, J., dissents, with an opinion.

McNAMEE, J. (dissenting). John Emerick, claimant's intestate, was a truck driver in charge of a heavy truck, drawing a trailer and carrying a load of sixteen tons, and with his helper, George Kelly, he was driving this truck from Philadelphia to Binghamton. These men were in Philadelphia during the day of September 29, 1932, and slept ten hours, and left for Binghamton about ten-thirty at night. Kelly had driven the first ninety miles to Stroudsburg, and there turned over the driving of the truck to Emerick, who drove about sixty-seven miles to the place of the accident. The steering wheel was on the left side of the cab, and the helper, after making the change, took his place in the right-hand seat, and slept until about eight o'clock in the morning, when the accident occurred.

The construction of the cab was such that the driver and his helper could not change seats, except by stopping the truck, and by one or the other alighting and walking around to the opposite side; and, in changing seats, this was the only practice that had been followed by these men for the two years during which they had worked together. Emerick was twenty-eight years of age, was in good health, and had experienced no trouble either at home, or in his work; and the two men were good friends. The truck was in good condition, and operated satisfactorily both before and after the accident. At and near the place of the accident the road was straight and level.

Kelly awoke, and with a glance observed that Emerick had left his seat behind the steering wheel on the left side, and was falling off the hood and front fender on the right side. As was

proved and was evident, Emerick had gone out of the left door of the cab, and crawled up over the hood of the truck on the left side and down on the right side, fell to the ground, was run over by the trailer, and was killed. The helper at once moved into the driver's seat, seized the steering wheel, and stopped the truck, which at that time was moving forward at a speed of twenty or twenty-five miles an hour, and was still on the road. Kelly did not know why Emerick left the driver's seat, nor how long he was absent therefrom, nor how long he was on the hood. The witness Wilcox, who was approaching from the opposite direction, observed Emerick crawling over the hood, and later, in a position as if reaching for the door, falling to the ground; and he also observed immediately thereafter the lurching to one side of the trailer. The testimony of these two witnesses, in so far as they refer to the same facts, is in accord; and the accident was observed by no one else.

In brief, the testimony makes it apparent that Emerick had the charge and control of the truck, which was heavy and loaded; that he was driving it at a substantial speed, and that his helper was asleep; and without waking the sleeper, and for no reason revealed by the evidence, he deserted the driver's seat, left the truck to run as it might on a public highway, and crossed over the hood, whereupon he fell to the ground, and was killed.

In his memorandum the referee states his theory, that " It is evident from this testimony that Emerick * * * left the wheel, crawled over the hood * * * intending to enter the cab on that side * * * to avoid stopping. * * * It is very apparent that the purpose was to change places with Kelly." The Industrial Board found that Emerick " while driving a truck carrying a large trailer, * * * fell off " the truck; and that " the injuries * * * arose out of and in the course of his employment." It is thus seen that the award of the Industrial Board is predicated upon a specific finding of fact, viz., that the deceased fell from the truck while he was driving it, and not upon a presumption that arises in certain cases under section 21 of the Workmen's Compensation Law. (Gifford v. Patterson, Inc., 222 N. Y. 4, 7.) And, indeed, there is no room for a presumption to arise in the case, as the accident appears fully from the direct proof. The theory of the referee that the decedent was crawling over the hood of the car for the purpose of changing places with Kelly is wholly without support in the evidence. It is a theory only. It does appear that Emerick had told Kelly that they were late, and that they would make up the time somewhere; but this may not be taken as proof that Emerick left the wheel without control to perform the extraordinary feat of crossing the hood while the

truck was running, to change places with his sleeping companion. And the findings of the Board that the decedent was driving the truck, and while so driving fell to the ground, and that thus the injuries and death of the decedent " arose out of and in the course of his employment," are likewise without support in the evidence.

Emerick had been employed to drive the truck, and care for it. At the time of the accident, and within the evidence here, he was not driving the truck, nor was any one else. The word " driving," as applied to an automobile on a public highway, is not a figurative expression; and one cannot be said to be so driving a truck when he voluntarily withdraws from the mechanism of operation, and voluntarily places himself in a position where he is not able to guide or control the vehicle in any degree. The proof does not warrant the finding that the decedent was driving the car when he fell.

Although the decedent owed the duty to his employer to drive the truck while it was in motion, and to care for it, he was doing neither. He was not guilty of mere negligence in a matter of incidental care (*Corrina* v. *De Barbieri*, 247 N. Y. 357).; but, on the contrary, he had abandoned the service of the employer, and was doing an act contrary to the object and purpose of the employment. (*Gifford* v. *Patterson, Inc., supra.*) He was not doing any duty prescribed or authorized by his employer, nor one incidental to his work of driving and care, nor was he assuming any risk connected therewith; but, quite differently, he was performing an act of his own volition, not only extraneous but foreign to the work he had undertaken to do. (*Di Salvio* v. *Menihan Company*, 225 N. Y. 123, 128, 129; *Cunningham* v. *Hunterspoint Lumber & Supply Company*, 256 id. 574; *Ulmann* v. *Thomas*, Id. 598.) While it has been often held that a claimant may step aside from his precise duties in the pursuit of some purpose reasonably incident to the employment in which he is engaged, even for his own benefit (*Wickham* v. *Glenside Woolen Mills*, 252 N. Y. 11; *Norris* v. *N. Y. C. R. R. Co.*, 246 id. 307), yet he may not abandon the duty upon which his employment rests, and voluntarily assume a risk which is not natural nor incidental to his employment, and expose himself to a risk that is clearly unreasonable. (*Groszek* v. *Western Union Telegraph Co.*, 262 N. Y. 478.)

The award of the Industrial Board should be reversed and the claim dismissed, with costs to the appellants.

Award affirmed, with costs to the State Industrial Board.