# Richmond

VIOLA ROSE SULLIVAN V. SUFFOLK PEANUT COMPANY.

November 21, 1938.

Record No. 2022.

Present, All the Justices.

440

The opinion states the case.

*Thomas L. Woodward* and *M. Anderson Maxey*, for the appellant.

*M. Wallace Moncure, Jr.*, and *R. E. Cabell*, for the appellee.

GREGORY, J., delivered the opinion of the court.

The appellant, Viola Rose Sullivan, filed a claim with the Industrial Commission in February, 1938, on behalf of herself as widow, Philip E. Sullivan, a son thirteen years of age, and Edith Sullivan, a daughter ten years of age, respectively, of Oscar E. Sullivan, wherein she claimed compensation from Suffolk Peanut Company, employer, for the death of Oscar E. Sullivan, employee. The Industrial Com-

mission denied the claim on the ground that the claimant failed to prove that the accident resulting in the death of her decedent arose out of and in the course of his employment, as required by Code, section 1887(2)(d).

There is practically no conflict in the evidence. The findings of fact by the commission are very brief. The facts as they will now be stated will not materially conflict with those found by the commission but they will be developed and stated in more detail.

Sullivan, the deceased employee, had been employed by Suffolk Peanut Company for more than eight years as a night watchman. The plant of this concern consists of a number of buildings located in the city of Suffolk in a triangle bounded by the Norfolk and Western right of way on the north and extending thereon a distance of 1,200 feet; on the southeast by Saratoga street which crosses the railway right of way a short distance east of the premises of the Suffolk Peanut Company; and on the west the property is bounded by Wellons street. An addition to the office of the appellee's plant, constructed by agreement with the railway company, projects to the north a distance variously estimated at from six to twelve feet into the right of way of the railway company, so that the north wall of this addition is three feet from the south end of the ties of the railway company's side track which extends along the entire distance of the plant. This addition creates an offset in the building and obstructs the view of one looking down the railroad side of the building unless he moves to the right of way of the railway company.

It is conceded that the death of Sullivan was the result of an accident. On October 6, 1937, Sullivan punched the time clock at 4:15 A. M. At approximately that time three members of the Suffolk police department riding in a scout car passed the premises but before passing stopped and talked with Sullivan. An east-bound freight train had stopped at Suffolk to take on and put off cars both to the west and to the east of the Saratoga street crossing. This train pulled out at 4:53 A. M. About 5 o'clock A. M., police

officer Ballard, one of the three who had a short time previously talked to Sullivan, found the latter's body on the tracks and in the crossing. He had been killed by the train and blood appeared on the fifty-third car from the engine. No one saw Sullivan at the point where he met his death. There is no evidence as to the circumstances surrounding the fatal accident. All that we know is that the train passed over his body and killed him. The point where his body was found was estimated at from thirty-five to ninety-three feet from the premises of the appellee.

Witness Butler who had been a night watchman for the appellee and who also had worked on an alternating shift with Sullivan testified that in the discharge of his duties as night watchman he had on occasions gone on the premises of the Norfolk and Western and that this was necessary in order to obtain a vision of the plant. He stated that his duties did not call him to the street crossing but that the conduct of his work was left to his wisdom and discretion.

Officer Ballard testified that the point where Sullivan was struck on the railway track was a good "vantage point" and that one could obtain a view of the plant from this point. Officer Spiers also testified that in order to obtain a view of the plant it was necessary to go on the tracks of the railway company.

At the time the body of Sullivan was discovered upon the tracks his flash light and time clock were found beside him.

Witness Pinner, secretary and treasurer of the appellee, testified that the watchman's duties required him to take care of the entire premises but that he was not expected to endanger his life by exposing himself to trains. He also testified that the watchman was not expected to leave the premises but that it was his duty to apprehend thieves and to call the police or fire departments even if these duties carried him away from the premises.

Sullivan was killed during his working hours and within less than forty minutes after the police had conversed with him.

The appellant maintains that the deceased met his death by accident arising out of and in the course of his employment. She asserts that this conclusion is warranted from these facts: Sullivan was killed during the hours of his work at a place where a night watchman might be; the point of accident was one which afforded a view of the entire railroad side of the plant and that there is an entire absence of any evidence that he was on a private mission of his own at the time he was struck.

The appellee denies that the facts justify the conclusion that Sullivan met his death as the result of an accident arising out of and in the course of his employment. It contends that he had abandoned his employment at the time and was on no mission of the employer.

██ In order for an injury to be compensable it must "arise out of and in the course of" the employment. This phrase has received a great deal of consideration by the courts and nearly every court of last resort in this country has attempted to construe it. The facts in no two cases are identical and to a certain extent each case must stand alone. In Virginia we have adopted the rule of the *McNicol Case*. (*In re McNicol*, 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306). See *Bradshaw* v. *Aronovitch*, 170 Va. 329, 196 S. E. 684, 686; *Cohen, Executor* v. *Cohen's Department Store, Inc., ante*, p. 106, 198 S. E. 476.

The *McNicol Case* is a leading authority on the interpretation of the phrase "arises out of and in the course of the employment." See 28 R. C. L., page 797. The *McNicol Case* is quoted at length in *Bradshaw* v. *Aronovitch, supra.*

██ The burden of supplying evidence from which the inference can be legitimately drawn that the injury arose out of and in the course of the employment, rests upon the claimant. An award based upon surmise or conjecture will be set aside. A finding that the injury is compensable, however, may be established by circumstantial evidence and in some cases claims are presumed to be within the meaning of the statute. 28 R. C. L., page 812.

Where an employee is found dead as the result of an accident at his place of work or near by, where his duties may have called him during the hours of his work, and there is no evidence offered to show what caused the death or to show that he was not engaged in his master's business at the time, the court will indulge the presumption that the relation of master and servant existed at the time of the accident, and that it arose out of and in the course of his employment.

This principle is well illustrated by the case of *Norris* v. *New York Central Ry. Company,* 246 N. Y. 307, 158 N. E. 879. There the workman was employed by the railway company to unload cans of milk from cars. During a temporary cessation of work he left his place of employment, for what reason no one knew, and was killed by a motor truck at a highway intersection a short distance away. The court in affirming an award made to his dependents held that neither the fact that the workman was absent from his place of work when killed, nor the fact that he was not actually working at the time, impugns the finding of the commission. The court observed that the workman when struck by the motor truck may have been on his way to a shanty to warm himself or to the yardmaster's office or he may have gone there to await the arrival of other trucks to be loaded with milk. The court applied a presumption that the workman was killed by an accident arising out of and in the course of his employment, there being no evidence to the contrary. The workman was killed during the hours of his working day; there was a temporary cessation of his work; the last work performed by him was for his master; he was killed in the vicinity where further work by him was to be performed; he may have been at the place of accident for legitimate purposes of the employment and there was no proof that he was there for a contrary purpose. These circumstances justified the application of the presumption that the relation of master and servant existed at the time the workman was struck and that he was killed as a result of an accident arising out of

and in the course of his employment. See also, *Czuczko* v. *Golden-Gary Co.,* 94 Ind. App. 47, 177 N. E. 466, 179 N. E. 19; *Wisconsin Granite Co.* v. *Industrial Commission,* 208 Wis. 270, 242 N. W. 191; *Simmons Co.* v. *Industrial Commission,* 211 Wis. 445, 248 N. W. 443.

In *Tully et al.* v. *Gibbs & Hill, Inc.,* 12 N. J. Misc. 275, 171 A. 313, the claimant's deceased had been employed as a night watchman and was found dead near the place of his employment but on the tracks of the Pennsylvania Railroad. He was killed by electrocution, having contacted a "third rail." There were no eye witnesses. It was conceded that his death resulted from an accident. The court in affirming the award of the commission held that [page 314]: "Where an employee, as here, is found dead from accident, and there is no evidence offered as to just how the death occurred, the court will presume that the accident causing the death was one that arose out of and in the course of the employment. Here it was perfectly consistent with the performance of his duty, under the circumstances that prevailed, that the deceased should be where he was at the time of the occurrence which resulted in his death." (Citing cases).

In *Czuczko* v. *Golden-Gary Co., supra,* the decedent was employed as the operator of a service elevator in the hotel of appellee. On September 3rd, the last day on which he was seen alive, he left his home about six o'clock in the morning to go to work. His dead body was found at the bottom of the pit of the shaft of the elevator four days later. A small key used for the purpose of opening the doors of the elevator shaft was found near his body. Testimony was introduced that one of the duties of deceased was to take ice to the basement and store it. On the morning his absence was discovered the ice had been stored in the basement as usual. The elevator was found on the first floor with the lights on and the door propped open and the floor was wet. The Industrial Commission of Indiana denied compensation to the claimant holding that the death of claimant's decedent did not result from an accident arising out of and in the course of the employment. Upon appeal, the appellate court

of Indiana reversed the conclusions of the Industrial Commission and held that: "If an employee, charged with the performance of a certain duty, is found injured at a place where it would be necessary for him to be in performing that duty, there is a presumption that he was injured as a result of and in the course of his employment. (Citing cases).

"It is presumed that, when an employee is found dead at the place of his employment, he met his death while in the performance of his duties. It is also presumed that the death was not the result of suicide or murder." 177 N. E. 469.

In *Keeler* v. *Sears, Roebuck & Co.*, 121 Conn. 56, 183 A. 20, it is said: "The accident occurred within the period of employment at a place where the decedent might reasonably have been. 'There is a natural presumption that one charged with the performance of a duty and found injured at the place where duty may have required him to be is injured in the course of, and as a consequence of, the employment.' *Saunders* v. *New England Collapsible Tube Co.*, 95 Conn. 40, 43, 110 A. 538, 539."

In *Flucker* v. *Carnegie Steel Co.*, 263 Pa. 113, 106 A. 192, the court said: "Where no facts appear indicating anything to the contrary, it may be presumed logically that an employee at his regular place of service, during his usual working hours, is there in discharge of some duty incident to his employment; and, when the dead body of an employee is found on the premises of his employer, at or near his regular place of service, under circumstances fairly indicating an accidental death which probably occurred during the usual working hours of the deceased, the inference may fairly be drawn, in the absence of evidence to the contrary, that the employee was injured in the course of his employment."

In *Saunders et al.* v. *New England Collapsible Tube Co.*, 95 Conn. 40, 110 A. 538, this is said: "There is a natural presumption that one charged with the performance of a duty and found injured at the place where duty may have required him to be, is injured in the course of, and as a consequence of the employment. We think it more likely than

otherwise that the decedent was doing her duty when injured, and that this is a reasonable inference to draw, in the absence of evidence to the contrary."

See also, *Tewes et al.* v. *Industrial Commission et al.,* 194 Wis. 489, 215 N. W. 898; *Codell Const. Co.* v. *Neal et al.,* 258 Ky. 603, 80 S. W. (2d) 530; *Wishcaless* v. *Hammond, Standish & Co.,* 201 Mich. 192, 166 N. W. 993; *Henry* v. *D. A. Odell Motor Car Co.,* 191 Minn. 92, 253 N. W. 110; *Fisher* v. *City of Decatur et al.,* 99 Ind. App. 667, 192 N. E. 844; and *Woodburn* v. *Oliver Machine Co., et al.,* 257 Mich. 109, 241 N. W. 159.

Under a compilation of cases with annotations construing the Workmen's Compensation Act in Virginia (1938 Ed.), edited and compiled by Honorable Parke P. Deans, Chairman of the Industrial Commission of Virginia, at page 23 is found the following statement of the rule: "It is also the law that where an employee charged with the performance of a duty is found injured at a place where his duty may have required him to be, there is a natural presumption that he was injured in the course of and in consequence of the employment." (Citing many cases).

The commission based its decision to deny compensation in this case upon *Dreyfus & Co.* v. *Meade,* 142 Va. 567, 129 S. E. 336. There the employee was a night watchman and his duties required him to be on the premises or immediately adjacent thereto. He left the premises and was walking across Broad street at First street, a block away, for the purpose of getting a cup of coffee at a restaurant about two blocks away, when he was struck and injured by an automobile. The court held that the injury was not compensable. A mere statement of the facts in that case, without more, is sufficient to clearly demonstrate the wide difference between it and the case at bar.

In the case at bar the evidence discloses that Sullivan died as a result of an accident which occurred during his working hours at a place near the premises which he was duty-bound to watch. His duty as night watchman did not require him to be on the premises at all times. The point

where he was killed afforded a view of a large portion of the plant of his employer. The employer granted him the privilege of exercising his own discretion in watching and protecting the premises. There was no evidence which tended to show that he was upon any private mission of his own. Under these circumstances and in the absence of any evidence to the contrary a presumption will be applied that he was engaged in his master's business when struck and that the accident which caused his death arose out of and in the course of his employment.

The order of the Industrial Commission is reversed and the case is remanded.

*Reversed and remanded.*