Middleton, J.
The sole effect of the stipulation was to submit the case on motion of the defendant for judgment at the close of plaintiff’s evidence. As in all cases so submitted, all evidence must be given the construction most favorable to the plaintiff. The court does not under such motion determine the weight of the evidence but whether there is any evidence as to which reasonable minds might differ. If the court finds that there is no evidence worthy of being submitted to the jury the motion of the defendant must be sustained. That is what the court found in this instance. Had the court found the existence of some evidence worthy of being submitted to a jury and had then, pursuant to the stipulation, rendered final judgment for the plaintiff a different question would have arisen on appeal, but that did not happen and no such other possible question is before this court.
To be entitled to participate in the workmen’s compensation fund the plaintiff was required to establish that her husband’s death was caused by an injury which occurred in the course of and arose out of his employment. Fassig v. State, ex rel. Turner, Atty. Genl., *73 95 Ohio St., 232, 116 N. E., 104; Industrial Commission v. Davis, 119 Ohio St., 221, 162 N. E., 796; Grabler Mfg. Co. v. Wrobel, 125 Ohio St., 265, 181 N. E., 97; Industrial Commission v. Nelson, 127 Ohio St., 41, 186 N. E., 735; Ashbrook v. Industrial Commission, 136 Ohio St., 115, 24 N. E. (2d), 33; Stevens v. Industrial Commission, 145 Ohio St., 198, 61 N. E. (2d), 198; Stanfield v. Industrial Commission, 146 Ohio St., 583, 67 N. E. (2d), 446.
The question of controlling importance is what happened at the time the injury was received. Unless and until that question is answered, the medical testimony which comprises a large part of the record is of no importance. The evidence upon this important question is meager indeed. The record contains no statement by Eggers as to the manner in which the injury was sustained. Only one witness saw him fall. That witness was Roy Yissing, a fellow employee who was working at some undisclosed distance from Eggers. The entire pertinent portion of the testimony of Yissing is:
“Q. IVill you tell what you saw happen to Mr. Eggers around eight o’clock on that evening? What were you doing ? A. I was working on a motor at the bench, and I just turned around and looked out toward the position of Mr. Eggers and the way it appeared to me, he had just turned around.
“Q. What did you see? Tell what you saw. A. He just turned around and fell. That’s all I saw.
“Q. Did you go over to him? A. Yes, I did, sir.
“Q. And what did you see when you went over to him, about his condition, if anything? A. Well, he was apparently out, I mean, that’s all I could say.
“Q. Did you see any marks or other on his body or his head or face? A. That I don’t remember.”
It was stipulated that another witness, one William *74 VonOtte, if present to testify, “would say that he had worked for a good time alongside the decedent and that the decedent did not complain about dizziness or feeling bad; further that he recalls an occasion when he was standing near the timeclock to check out, observed some commotion and that he ran down the aisle to see what it was and saw the decedent lying alongside of a housing; further that he saw the decedent placed on a stretcher and taken to the first-aid room.”
There was no other evidence as to the incident.
There was no evidence as to the character of work which he performed, or where he was standing when he fell, with respect to the place where he performed his work, or that he had been subjected to any unusual strain or any unusual condition, or that any incident connected with his employment caused him to fall.
Mrs. Eggers testified that she saw her husband in the hospital immediately after he was injured. She was asked:
“Q. And what did you observe about his condition at the Good Samaritan? A. When I got there he was unconscious. He had a cut on his head.
“Q. What side of his head? A. Near the crown of his head.
“Q. What else did you observe? A. He was covered with blood and the cut was bleeding very much.”
Margaret Hilberg, a neighbor, who accompanied Mrs. Eggers to the hospital, testified as follows:
“Q. And what did you see when you got there? A. Well, they took him in the receiving ward and there was an intern had come in, this is as nearly as I recall, I haven’t gone over this thing, and he had a cut on his head, I would say an inch and a half or two inches and which the intern called to our attention, saying that * * *. It was bleeding, open wound.
*75 “Q. Was he conscious or unconscious? A. He was unconscious. ’ ’
Carl Eggers, a brother, testified that he saw the injured man in the hospital during the evening of May 6, “in bed, unconscious * * * and his head wrapped up and the cut was on his head.” He further testified:
“Q. I will ask you to state whether or not you saw any blood? A. Yes, sir.
“Q. Where? A. I couldn’t recall. It was coming down on the left side of his face.”
Dr John W. O’Brien, who examined Eggers immediately after his admission to the hospital, testified:
“Q. What was his physical condition as you observed it then? A. Mr. Eggers was unconscious, cold, mild shock.
“Q. Wh.at, if anything, did you notice about his body, his condition? A. Evidence of head injury.
“Q. What was that evidence? A. Laceration of lateral side of the scalp.
“ * * *
“Q. What was the extent of the laceration? A. Superficial scalp laceration.
“Q. What do you mean by superficial? A. Did not penetrate through the entire thickness of the scalp.”
There is no other evidence indicating how the injury may have been sustained.
Upon this record it is argued on behalf of plaintiff that when Eggers fell his head struck a “housing.” Counsel for plaintiff refer to the “housing” as a piece of machinery but the record is devoid of any description of it. The claim that Eggers’ head struck the “housing” is predicated upon the assertion of counsel that the cut was on the crown of the head, which, they argue, could not have resulted from striking only the floor. This argument is completely refuted by *76 the undisputed evidence that the cut was on the lateral side of the scalp, near the crown of the head. Furthermore, there is no evidence of marks or blood upon the “housing” and no evidence that his head was near the housing as he lay on the floor. The only evidence on that subject is that of VonOtte, by stipulation, that Eggers was “lying alongside of a housing.”
In Stanfield v. Industrial Commission, supra, participation in the workmen’s compensation fund was denied where the workman, probably from dizziness, fell back and hit his head on the cement floor of the building in which he was employed. In the per curiam opinion of that case the court said:
“In the instant case the floor was in no sense an added risk or hazard incident to the employment. The decedent’s head simply struck the common surface upon which he was walking — an experience that could have occurred to him in any building or on the street irrespective of his employment. The fall resulted from the seizure alone and not from any circumstance of his employment.”
There is no evidence in this case on which a jury could find that Eggers’ head struck the “housing” or anything else when he fell. In the absence of such evidence it must be assumed that his head was cut when it hit the floor.
The facts of this case do not bring it within the scope of Industrial Commission v. Nelson, supra, where the workman was seized with an epileptic fit which caused him to fall and in falling his head struck the corner or steel base of a large spot welding machine at which he was then working. There it could be said that the fall, though due to a cause not related to the employment, would not have carried the consequences it did except for the presence of machinery which was a circumstance incident to his employment. That rea *77 sorting cannot be applied to tbe facts of the instant case.
It is well established that the mere fact that injury or death of an employee occurred while he was engaged in the employment is not sufficient to entitle a claimant to an award of compensation. See Industrial Commission v. Davis, supra, and Grabler Mfg. Co. v. Wrobel, supra.
The plaintiff admits the necessity of proving causal connection, that is, that the injury was received in the course of and arose out of the employment. It is urged, however, that the plaintiff is entitled to a presumption, in the absence of evidence to the contrary, that the injury. arose out of and in the course of Eggers’ employment because at the time of the injury he was in his place of employment. In support of that argument unwarranted reliance is placed upon Stevens v. Industrial Commission, supra, and particularly upon one sentence which appears on page 201. In that case an employee was killed during working hours at a place far distant from the place of employment and it was held that, under such circumstances, there is a presumption, in the absence of evidence to the contrary, that his death did not occur in the course of and arise out of his employment. The court did not hold that the converse of the statement would be true.
In the opinion in the Stevens case, supra, Judge Hart was commenting upon the plaintiff’s claim of a right of recovery in reliance upon a rule of presumption adopted in the cases of Sullivan v. Suffolk Peanut Co., 171 Va., 439, 199 S. E., 504, 120 A. L. R., 677, and Norris v. New York Central Rd. Co., 246 N. Y., 307, 158 N. E., 879. He then stated: “This court finds no fault with this rule as applied to the circumstances of those cases.” It is that statement in the opinion on which the plaintiff here relies as adoption by this court of the rule of presumption announced in the two *78 cases there cited and discussed. It is to be noted that the comment above quoted was not carried into the syllabus which is the law of the case.
The facts of the Sullivan case and of the Norris case above referred to were in no wise similar to the facts of the instant case. In each of them the employee was found dead at a place where he had a right to be in the performance of his duties and it was obvious that he had met a violent, accidental death. The circumstances were such as to indicate that the death occurred while the decedent was performing his duties. There was no evidence to the contrary.
The necessity of evidence to support a presumption such as is here urged by the plaintiff is indicated by the following language which appears in the Sullivan case, at page 443:
“The burden of supplying evidence from which the inference can be legitimately drawn that the injury arose out of and in the course of the employment, rests upon the claimant. An award based upon surmise or conjecture will be set aside.”
A comprehensive pertinent annotation appears in 120 A. L. R., 683, in connection with the report of the Sullivan case, supra. It would appear that the weight of authority approves the rule announced and followed in the Sullivan case, but a respectable number of courts refuse to follow that rule. It is interesting to note that in almost every decision in which that rule of presumption is adopted the circumstances were quite similar to those involved in the Sullivan and Norris cases, supra, that is, the employee was found dead at a place which could be considered his place of employment and his death had obviously been violent and accidental. Such facts were considered as persuasive circumstantial evidence.
The basis of the presumption is discussed in Nar *79 done v. Public Service Electric & Gas Co. (1934), 113 N. J. Law, 540, 174 A., 745, as follows:
“Our analysis of the cases on this subject leads us to the conclusion that in each case where liability was imposed on the employer, and sustained, on presumptive or circumstantial evidence there is to be found circumstances which form the basis for a rational inference, tantamount to legal proof of the fact, that the accident resulting in death arose ‘out of’ and ‘in the course of’ the employment.”
In the more recent case of Jochim v. Montrose Chemical Co., 3 N. J., 5, 68 A. (2d), 628, which case was cited in argument herein, the employee was found dead on the concrete floor of a plant at the foot of steps leading to a platform on which vats were located and which steps he was required to ascend in the performance of his duties. Both the floor and the steps were moist and slippery. Compensation was awarded in that case. The opinion contains the following language:
“In civil cases it is sufficient if the circumstantial evidence be such as to afford a fair and reasonable presumption of the facts inferred. Circumstantial or presumptive evidence, as the basis for deductive reasoning in the determination of civil causes, is a mere preponderance of probabilities. The only requirement is that the claimed conclusion from the offered fact must be a probable or more probable hypothesis, with reference to the possibility of other hypotheses.”
In the Norris case, supra, near the end of the opinion, it is said:
‘‘ Under these circumstances, we think the Industrial Board was justified in assuming or inferring that Norris continued in his employment and vas killed by an accident arising out of and in the course of his employment. ’’
The above-quoted statements and similar statements *80 appearing in other decisions indicate some confusion in the use of the terms, “presumption,” and, “inference.”
In paragraph five of the syllabus in the case of Shepherd v. Midland Mutual Life Ins. Co., 152 Ohio St., 6, 87 N. E. (2d), 156, this court defined “presumption” as follows:
“A presumption of law is equivalent to a substantive rule of law to the effect that a particular fact must be assumed when another particular fact or group of facts exist, unless and until the assumed fact is rebutted by substantial evidence.”
In the instant case it can be said with certainty that no facts were proven which would compel a court or jury to determine that Eggers’ death resulted from an injury which arose out of his employment. As distinguished from a “presumption” in the strict sense, an “inference” may be defined as a conclusion which the court or jury may reach from facts or circumstances which are proved but which conclusion is not mandatory. In such case the facts or circumstances so proved are competent evidence to be considered and on which a conclusion may but need not necessarily be reached.
A study of the cases where the so-called rule of “presumption” has been applied convinces us that the courts have applied what could more properly be termed a rule of “inference” than of “presumption.” In the instant case this court is not required to and does not approve or reject either a rule of presumption or a rule of inference on the question of whether Eggers suffered a compensable injury. Such evidence as was presented in this case would not invoke either rule.
The record contains considerable testimony as to the continuing effect of Eggers’ injury and as to the ultimate cause of his death. The doctors disagree as to *81 whether he suffered from a brain tumor of uncertain age and origin or from a brain absGess which could have resulted from a blow on the head.
A careful study of the record convinces this court that the trial judge correctly decided that there was no evidence on which a jury could find that the injury of Eggers arose out of his employment. It is, therefore, unnecessary to consider the medical testimony.
The judgment of the Court of Appeals is affirmed.

Judgment affirmed.