Taft, J.,
dissenting. In view of the manner in which this cause was tried, the primary question presented for decision by this court is whether there was in the record evidence which would have justified the submission of the cause to a jury. If this cause had been submitted to a jury for consideration and the jury had rendered a verdict for the Industrial Commission, such a verdict would have been fully supported by the evidence in the record. However, it does not follow that the trial court should have directed a verdict for the Industrial Commission, although the decision of the majority represents a holding that it should. Unless this court is to weigh the evidence in Industrial Commission cases, as it does not in other cases, I cannot agree with that decision.
The testimony as to the cut on decedent’s head and his unconscious condition, as outlined in the majority opinion, shows that decedent suffered an injury caused by external and violent means. That having been shown, then, in the absence of evidence that the injury “was brought about through * * * intentional self-infliction of injury, criminal assault by a third person or other nonaccidental means,” there is either a presumption or an inference may be drawn that such injury was caused by accidental means. Shepherd v. Midland Mutual Ins. Co., 152 Ohio St., 6, 87 N. E. (2d), *84 156 (paragraphs six to nine, inclusive, of the syllabus). There was also substantial testimony in the record tending to prove that, before this injury, decedent had no physical ailments which might have contributed to the fall which caused his injury. Such evidence tends to negative the existence of any “nonaccidental means” as a cause of decedent’s fall and resulting injury.
The question remains whether the evidence in the record will support a reasonable inference that the fall causing decedent’s injuries occurred in the course of decedent’s employment.
Admittedly, decedent fell in the factory where he was employed and during his hours of employment.
Under those circumstances, it seems to me that it would be far more reasonable to infer that the fall occurred while decedent was doing something within the course of his employment than it would be to infer that the fall occurred while decedent was doing something outside the course of his employment. To draw the former inference would be to choose a probability while to draw the latter inference would be to choose a mere possibility.
We have, therefore, a situation where the evidence would justify findings by reasonable minds that decedent’s fall was caused by accidental means and that such fall occurred in the course of his employment. From those findings, it would follow that decedent's injury was an “accidental injury in the course of and arising out of his employment.”
Notwithstanding the effort of the majority opinion to avoid its effect, I believe that a reading of the full statement by Hart, J., at page 201 in Stevens v. Industrial Commission, 145 Ohio St., 198, 61 N. E. (2d), 198, will disclose that that statement fully supports such a conclusion.
Furthermore, that conclusion is fully supported by *85 most of the eases on the question referred to in what the majority opinion describes as the “comprehensive pertinent annotation” at 120 A. L. R., 683. At page 684 in that annotation it is stated:
“It is generally held that when it is shown that an employee was found dead at a place where his duties required him to be, or where he might properly have been in the performance of his duties during the hours of his work, in the absence of evidence that he was not engaged in his master’s business, there is a presumption that the accident arose out of and in the course of the employment within the meaning of the compensation acts.”
I believe that conclusion is further supported by the language which the majority opinion quotes from the two New Jersey cases. Certainly, the fact that the decedent fell where and when he did may “form the basis for a rational inference” that he fell in the course of his employment and that conclusion is “a more probable hypothesis, with reference to the possibility of other hypotheses. ’ ’
In support of its conclusion, the majority opinion quotes from Sullivan v. Suffolk Peanut Co., 171 Va., 439, 199 S. E., 504, 120 A. L. R., 677. However, immediately after the language quoted in the majority opinion of this court, the Virginia court qualified that quoted language with the following statement:
“A finding that the injury is compensable, however, may be established by circumstantial evidence and in some cases claims are presumed to be within the meaning of the statute. 28 R. C. L., page 812.
“Where an employee is found dead as the result of an accident at his place of work or nearby, where his duties may have called him during the hours of his work, and there is no evidence offered to show what caused the death or to show, that he was not engaged in his master’s business at the time, the court will in *86 dulge the presumption that the relation of master and servant existed at the time of the accident, and that it arose out of and in the course of his employment.
“This principle is well illustrated by the case of Norris v. New York Central Ry. Co., 246 N. Y., 307, 158 N. E., 879.”
In addition to those referred to in the annotation at 120 A. L. R., 683, the following cases are to the same effect: Wahlig v. Krenning-Schlapp Grocer Co., 325 Mo., 677, 29 S. W. (2d), 128; McCoy v. Simpson, 346 Mo., 72, 139 S. W. (2d), 950; Milstead v. Kaylor, 186 Tenn., 642, 212 S. W. (2d), 610; Buff v. Columbia Baking Co., 215 S. C., 41, 53 S. E. (2d), 879.
It should be sufficient to distinguish Stanfield v. Industrial Commission, 146 Ohio St., 583, 67 N. E. (2d), 446, to quote as follows from the per curiam opinion:
“The facts are simple. For a period of approximately six months preceding his death the decedent had received the attention of a physician for a heart difficulty diagnosed as angina pectoris. This was accompanied by dizzy spells, headaches, hypertension and hypertrophy with a slight trace of sugar. On the day of his death decedent worked at his machine until noon when he went into a rest room provided by the company for use by its employees. He was observed to be walking fast in a stooped position and waving his arms in a peculiar manner. Then he straightened up and fell backwards striking his head on the cement floor. He died ten or fifteen minutes later. His physician stated that death was due to angina pectoris and coronary thrombosis with a contributing cause of arteriosclerosis.
6 6# * *
“ * * * The fall resulted from the seizure alone and not from any circumstance of his employment.”
The testimony in the instant case negatives any such nonaccidental cause of decedent’s fall.
*87 At this point, it may be observed that it would be necessary for the claimant to rely upon evidence that decedent’s head struck a “housing” of a machine or upon Industrial Commission v. Nelson, 127 Ohio St., 41, 186 N. E., 735, only if the decedent’s fall had had a nonaccidental cause such as that involved in the Stanfield case.
In neither Industrial Commission v. Davis, 119 Ohio St., 221, 162 N. E., 796, nor Grabler Mfg. Co. v. Wrobel, 125 Ohio St., 265, 181 N. E., 97, cited in the majority opinion, does the report of the case in this court indicate that the decedent there involved had any external marks of injury or violence on his body. Both of those decedents died of heart attacks. Thus, there was no justification for an inference in either case of an accidental injury. On the other hand, the evidence in the instant case is that the decedent fell and that thereafter he had a bleeding cut on his head accompanied by a concussion. Furthermore, there was evidence negativing the existence of any nonaccidental cause of decedent’s injury. As hereinbefore pointed out such evidence justifies the inference of an accidental injury.
The Attorney General has argued that the stipulation, made by his predecessor and under which this case was tried, prevented the trial court from considering any evidence except that offered by the plaintiff; and that the trial court could not be so restricted by stipulation because of the provisions of Section 1465-90, General Code. If that argument were sustained, it might justify a reversal of the judgment but it would not justify a final judgment against the claimant on the record before this court.