ANDREW SCHREINER, PLAINTIFF–DEFENDANT IN ERROR, v. NEW YORK AND NEW JERSEY TELEPHONE COMPANY, DEFENDANT–PLAINTIFF IN ERROR.

Argued November 22, 1911—Decided March 4, 1912.

1. Grounds of objection to the admission of evidence, which were not presented to the trial court, will not be considered on writ of error.
2. Where the evidence justifies the points suggested by an hypothetical question, the answer to which is material to the issue, such question is not irrelevant.
3. The refusal of a request to specifically affirm a proposition, which had already been affirmed in substance in the general charge, is not ground for reversal.
4. An instruction that if the jury should find that the gate, the fall of which caused the injury, was blown down by a wind of only from thirty-five to forty miles per hour, such a wind would not absolve defendant from liability, is not error. It is a matter of common knowledge that a wind of this velocity is not an extraordinary wind.

On error to the Supreme Court.

For the plaintiff in error, *Edward A. & William T. Day.*

For the defendant in error, *Nathan Kussy* and *Benjamin M. Weinberg.*

PER CURIAM.

The judgment in this case is affirmed, for the reason stated in the *per curiam* opinion of the Supreme Court, which was as follows:

"While passing along North Canal street, in Newark, the plaintiff was injured by the falling of a wooden gate which defendant maintained on its premises, and which hung on a trolley.

"The jury found for the plaintiff. He was an epileptic, and an operation had been performed on his head some four years prior to the accident.

"It is insisted, as a first assignment of error, that the court improperly admitted testimony of an expert witness concerning the effect of that operation. The challenged question was asked of Dr. Hinckley, and was as follows:

"'Q. Suppose an epileptic were operated upon and pressure removed (bone removed) from the head, and suppose this epileptic had been subject to attacks, which were entirely absent for eight months after such operation, to what would you attribute their absence?'

"The question was objected to by counsel for the defendant, the ground of objection being, 'That is not this case.'

"The answer to the question was, 'The relief of the pressure upon the brain.'

"The contention before us is that the question was improper because the operation could have no bearing upon the case, or the injury suffered by the plaintiff from the accident. It is not suggested before us that the facts embodied in the question were not the facts in the case being tried. We cannot consider here grounds of objection not presented to the trial court, and consequently this assignment must fall.

"It is further contended that it was improper to permit a hypothetical question asked of Dr. Hinckley to be answered. The question was as follows:

" '*Q.* Suppose that a man suffering from epilepsy were subject to epileptic attacks at intervals of a month or two months; now, if, after the happening of an accident, such as I have described, he should have a succession of epileptic attacks so that they should follow each other with such frequency that there should be eight or ten of these seizures in rapid succession on the night of the accident; suppose the number of these attacks, and the intensity of such seizures should diminish as time progressed, but that after the expiration of two years from the day of the accident the epileptic should still be subject to such seizures at intervals of two weeks, and of greater intensity, than those to which he was subject prior to the accident, would you state whether, under these circumstances, the accident injured the epileptic temporarily, or permanently?'

"The question was objected to on the ground that the evidence does not justify the form of the question; that in any event it is illegal, irrelevant and immaterial. We think the evidence did justify the form of the question, and we also think the question was not illegal, therefore; neither was it irrelevant or immaterial. It was material, of course, to show whether the injury resulting from the accident was permanent or temporary. That it is irrelevant, although material, is, of course, absurd, and therefore this assignment must fail.

"It is further argued that there was error in the refusal of the court to charge the eighth request of the defendant. The request is as follows:

" 'If the jury believes that the gate was built with sufficient security to withstand any wind that a reasonably prudent man ought to have anticipated, and fell only because of a wind of such extraordinary violence, or unusual character, that a reasonable man would not have anticipated it, then the defendant is entitled to a verdict in his favor.'

"On this phase of the case the court charged the jury as follows:

" 'In a case of this kind this company had a right to maintain a fence (a gate), and it was not obliged to build it so strong and so secure that under no circumstances would it ever

fall. It might be blown down by a terrific wind, or by some other act of God for which the defendant would not be responsible at all. But because it is blown down by an ordinary wind does not exculpate the defendant from liability. This company was obliged to build, and see that that fence was maintained, in such a way as to withstand all the ordinary occurrences of weather. It was not obliged to anticipate cyclones, or anything of that kind. But an ordinary wind must be held, and is held by law, to be within the contemplation of a person or corporation that maintains a fence in the position in which this fence was. * * * People cannot build fences so insecure and so weak, so infirm, as to fall over upon pedestrians without being subject to the duty of explaining. If they show an unusual wind, an unusual occurrence of conditions, which the reasonably prudent man could not fairly be presumed to anticipate, the defendant would be absolved from liability.'

"We think this is a substantial compliance with the request.

"It is further contended that there was error in the following instruction of the court to the jury:

" 'A wind of thirty-five or forty miles an hour velocity is not an extraordinary wind. We all know that winds sometimes blow much harder than thirty-five or forty miles an hour; and if that wind only blew at that rate, I think it is my duty to tell you, as a matter of fact, that that would not be the extraordinary wind which would absolve this defendant from liability.'

"The objection to this instruction is that it, in effect, declares that the testimony discloses a wind of only thirty-five or forty miles velocity, and that this, as a question of law, was not sufficient to relieve the defendant of liability. We do not think this instruction undertakes to settle the question of fact, but, upon the abstract proposition, we think the instruction of the court, if the gate was blown down by a wind of that velocity it would not absolve the defendant, was correct. A person constructing a gate or fence is bound to use care to prevent it from being wrecked by winds which are not of unusual occurrence, and it is common knowledge that a wind of that velocity is not an unusual occurrence.

"It is further contended that the court erred in refusing to charge that, in the absence of any evidence on the part of the plaintiff to show his pecuniary loss, the jury, if they find for him, must limit the amount of their verdict to such sums as will compensate him for pain and suffering, and not for any money loss.

"There was evidence to show that the plaintiff, by this accident, was deprived of the power of earning money, which otherwise, presumably, he would have earned. The refusal to charge, therefore, was proper, and the instruction upon the subject of pecuniary loss was also proper."

*For affirmance*—THE CHANCELLOR, GARRISON, SWAYZE, PARKER, BERGEN, VOORHEES, KALISCH, BOGERT, VREDEN-BURGH, VROOM, CONGDON, WHITE, JJ. 12.

*For reversal*—None.