LIDA TULLY AND EDWARD J. TULLY, PETITIONERS-DEFENDANTS, v. GIBBS & HILL, INCORPORATED, RESPONDENT-PROSECUTOR.

Argued October 4, 1933—Decided March 1, 1934.

Before Brogan, Chief Justice, and Justices Trenchard and Heher.

For the prosecutor, *Cohen & Klein* (*Philip Klein,* of counsel).

For the defendants, *Harry Unger.*

PER CURIAM.

This writ of *certiorari* brings up for review a judgment of the Hudson County Court of Common Pleas affirming the finding and determination of the workmen's compensation bureau in a workmen's compensation case. The following are the facts:

Thomas F. Tully was employed by the prosecutor, Gibbs & Hill, Incorporated (contractors at this time and place for the Pennsylvania Railroad Company), as a watchman and on the morning of June 22d, 1932, was found dead at or near the place of his employment on tracks of the Pennsylvania Railroad Company, at a point known as Journal Square, Jersey City. His death resulted from electrification, brought about by contact with a "third rail." His body was discovered at about six o'clock in the morning of the day in question. No eye witness of the occurrence was produced at the hearing.

The prosecutor of the writ has set down sixteen reasons for reversal. However, the case is argued under three headings. First, that the accident did not arise out of the employment; second, that the trial court erroneously permitted a witness, Clark, to answer a question on his direct examination as to what the duties of the deceased were and, third, that the amount allowed in compensation is erroneous.

It is not disputed but that the deceased died of an accident. The prosecutor contends that the accident did not arise out of the employment. It is necessary to briefly discuss the facts and circumstances surrounding the occurrence. The property of the employer, which it was the decedent's duty to guard, was placed on the northerly side of what may be called the Pennsylvania railroad "cut" in the vicinity of Journal Square. It consisted of cables, a hoist and a pump. The first three sets of rails on the northerly side of this railroad right of way are not electrified but are used for steam trains; the next seven sets of rails are used by Hudson and Manhattan railroad trains, and all are equipped with a "third rail" with the exception of one set of rails furthest south.

The decedent was found with his left shoulder in contact with a "third rail," his right shoulder being caught under the guard of the same rail. The medical testimony estab-

lished that his death was due to shock. During the night, according to the evidence, there was a heavy downpour of rain.

On this first point, much testimony has found its way into the record as to what the decedent was doing immediately prior to or at the time he met the accident which caused his death. It is suggested that he may have gone to the car seeking shelter from the heavy rainstorm; or that the decedent may have considered the Hudson and Manhattan railroad car, which apparently was lying there for the night, an advantageous spot from which to keep watch over the equipment that he was engaged to watch and which was located at three different points on the north side of the railroad "cut;" or it was further suggested, that the deceased may have been going to or returning from a toilet on the southerly side of the right of way at the time that he met his death.

From the facts and circumstances in this case, we think that the deputy commissioner was justified in drawing the inference that the accident to the decedent arose out of the decedent's employment. *Muzik* v. *Erie Railroad*, 85 *N. J. L.* 129; 89 *Atl. Rep.* 248; *De Fazio's Estate* v. *Goldschmidt Detinning Co.*, 87 *N. J. L.* 317; 88 *Atl. Rep.* 705.

When an employe, as here, is found dead from accident and there is no evidence offered as to just how the death occurred, the court will presume that the accident causing the death was one that arose out of and in the course of the employment. Here it was perfectly consistent with the performance of his duty, under the circumstances that prevailed, that the deceased should be where he was at the time of the occurrence which resulted in his death. *Zabriskie* v. *Erie Railroad*, 85 *N. J. L.* 157; *De Fazio's Estate* v. *Goldschmidt Detinning Co.*, *supra*.

The second ground for reversal is that the court permitted the witness, Clark, to answer a question concerning the duties of the deceased. This ground for reversal has no merit for two reasons, the first being that this error, if indeed it was error, was harmless for the reason that the testimony which the prosecutor here complains of was put into the record later by counsel for the prosecutor in the examination of one of his

own witnesses, and, secondly, the record before us does not disclose any proper ground for appeal. At the trial, counsel stated that he objected to the question. This without more does not make for a proper ground of appeal. The court is entitled to be informed of the reason for the objection to a question or an answer and if the reason for the objection is not stated there is of course nothing for the appellate tribunal to review. *Schreiner* v. *New York and New Jersey Tel. Co.,* 82 *N. J. L.* 743; 82 *Atl. Rep.* 887; *Booth* v. *Keegan,* 108 *N. J. L.* 538; 159 *Atl. Rep.* 402; *Belperche* v. *Erie Railroad,* 111 *N. J. L.* 81; 166 *Atl. Rep.* 463; *State* v. *Donnelly,* 26 *N. J. L.* 465 (at *pp.* 511, 512).

As to the third point, it is sufficient to say that we find no error in the computation of the compensation as allowed by the deputy commissioner, which was affirmed by the Common Pleas Court.

The writ will therefore be dismissed, and the judgment below affirmed, with costs.