GIOVANNINA NARDONE, PROSECUTRIX; v. PUBLIC SERVICE ELECTRIC AND GAS COMPANY, RESPONDENT.

Submitted May 11, 1934—Decided October 4, 1934.

Before Justices TRENCHARD, HEHER and PERSKIE.

For the prosecutrix, *Sandmeyer & Meissner*.

For the respondent, *Henry J. Sorenson* (*Henry H. Fryling* and *William H. Speer*, of counsel).

The opinion of the court was delivered by

PERSKIE, J. Arcangelo Nardone, twenty-nine years of age, husband of the prosecutrix, and father of two minor children, two and five years of age, was employed as a mechanical helper by the respondent, at its Coal street garage, Newark, New Jersey. He also took care of the furnace in the premises. In the performance of his latter duties he was required to go outside the enclosed premises, into the open yard, to obtain coal. A brick stack, approximately two hundred and fifty feet high, is situated about thirty feet from the basement exit of the garage. A hand shovel protruded from a pile of coal at the base of the stack. In close proximity to the coal pile there was an empty wheelbarrow. These facts tend to indicate that Nardone had undoubtedly started to get some coal. His working hours, at the time, were from eleven P. M. through the night.

On November 25th, 1930, about six-forty-five A. M., Nar-

done was found unconscious in the basement of the garage, underneath an ash hopper. A pool of blood was at the spot where he was found and another pool of blood was a few feet away from the wheelbarrow. Between the two pools there was also what was described as a "trail of blood." Nardone's hat, with a hole in the top, was found a few feet from the coal pile. He sustained a fractured skull in the occipital region and died a few hours after he was found. Evidence was "that there was some soot around the hole in his head." There was also some evidence that footmarks indicated "like somebody had skidded around there; a couple of them. There weren't many." Under the proofs, however, we attach little, if any, importance to the subject of the footmarks. For the few words spoken by the deceased, by way of intermittent answers to questions put by detectives of the police department, disclosed that there was no fight; that deceased had not been hit by anyone; that he did not know how he sustained the injuries.

Prosecutrix, in her petition, answering inquiry 17, "what was the nature of the accident and how did it happen?" stated "deceased was employed in wheeling coal in a wheelbarrow and while engaged in this occupation *was struck on the head by a heavy object falling* from the property of defendant, &c." Respondent denied having any knowledge as to how the accident happened.

The case was tried before the workmen's compensation bureau (Stahl, deputy commissioner) on the theory that a brick had fallen out of the stack, heretofore described, hitting the deceased and resulting in his death.

In support of that theory claimant produced police officers who gave such testimony as, "there was an opening at the very top of the chimney or stack, not the natural one, through which opening daylight could be seen," "I mean brick around the chimney," "there was a brick missing from the top;" that "there was a space at the top of the chimney," "a small gap in the peak of it."

Respondent produced sixteen witnesses. The personnel of these witnesses consisted of builders, engineers and surveyors, experts and lay persons. The construction of the stack, gen-

erally, and the laying and setting of all bricks therein, particularly, was described in detail and tended to indicate the lack of any likelihood that any one brick thereof could have fallen out. The stack was climbed and minutely examined. Other witnesses examined it by the use of a transit, binoculars and telescopes of special construction, and some of which magnified the object inspected from thirty to seventy fold. All of the witnesses for respondent testified that not a brick was missing in the chimney or stack. One of the witnesses for the prosecutrix (a police officer) who testified that a brick was missing, was asked by a witness for respondent to accompany him to the stack and point out the missing brick. They went to the stack. They used magnifying glasses but no missing brick was pointed out; although the witness did leave the inference that the stack looked differently than it did at the time he first examined it.

The deputy commissioner was of the opinion that respondent's proof completely rebutted petitioner's proof that a brick of the stack was missing or that there had been any repairs made to the stack since November 25th, 1930. We also think so. We are, of course, not swayed by the mere number of respondent's witnesses. We are, however, convinced by the character of the witnesses and the quality, and probative value, of their testimony. This testimony is not only cumulative; it is overwhelming. It is convincing. It compels the conclusion that the theory (of a falling brick) upon which the petitioner sought to impose liability on the respondent was completely exploded. And so was the inference that the stack was repaired since November 25th, 1930, thoroughly dispelled.

The deputy commissioner concluded that the accident occurred "in the course of" the employment; that all other necessary elements had been complied with except the one that the accident arose "out of" the employment. But neither finding alone is enough. *Hulley* v. *Moosbrugger,* 88 *N. J. L.* 161, 164. And he also found that the evidence did not convince him that the cause of death was due to a risk which was directly or indirectly connected with the employment.

Counsel for the prosecutrix, in their brief, conceded that,

"there were no witnesses to the actual happening. The object which struck Nardone was never identified * * *. No affirmative proof of how the accident happened could be furnished, but we have the death, the statement of the deceased and some evidence of a brick falling from the chimney, we have the hole in the hat, a hole in the head with soot around it," and argue, on this premise, notwithstanding the utter failure to sustain the theory upon which the case was tried, that in the absence of any other explanation of the accident and the resulting death there was a legitimate deducible inference that it arose "out of" the employment.

The difficulty with the argument for prosecutrix lies not in the lack of the probative value of a proper deducible inference to sustain a judgment; that is well settled. See *Dunn & Friedman* v. *Goldman,* 111 *N. J. L.* 249; 168 *Atl. Rep.* 299; *Jackson* v. *Delaware, Lackawanna and Western Railroad Co.,* 111 *N. J. L.* 487; *Farrell* v. *New Jersey Power and Light Co., Ibid.* 526. Suicide and murder are, of course, not to be presumed. *Steers* v. *Dunnewald,* 85 *Id.* 449. Reversed on other point in 89 *Id.* 601. But, the difficulty lies in the fact that it ignores adjudicated definitions and determinative prerequisites of the phrase "an accident arising out of the employment." Perhaps it will not be out of place to restate them.

An accident arises "out of" the employment when it is something the risk of which might have been contemplated by a reasonable person, as incidental to it. And a risk is incidental to the employment where it belongs to or is connected with what a workman has to do in fulfilling his contract of service. *Bryant* v. *Fissell,* 84 *N. J. L.* 72. Thus whether the proof be direct proof, circumstantial or presumptive proof, *i. e.,* based on a proper deducible inference, or both, it must show that the cause of death was due to a risk which was directly or indirectly connected with it or incidental to the employment. This is the real test. The following cases are illustrative:

In *Atchinson* v. *Colgate & Co.,* 3 *N. J. Mis. R.* 451, a laborer, while wheeling a hand truck, helping to unload a truck, fell from a gang plank to the sidewalk, employer claimed that

the paresis from which the workman died was not the result of the fall. The deputy commissioner found, under the proofs, that the accident arose in the course of and out of the employment. The Supreme Court sustained the finding and held if the employer seeks to avoid liability for a cause for which it is not responsible the burden of proof is on the employer to show such cause.

In *Pacelli* v. *Janowitz Brothers*, 5 *N. J. Mis. R.* 474 (workmen's compensation bureau finding), the body of the deceased (a night watchman) was found at the foot of a staircase in the factory of the employer, with the body in such a position that it convinced the deputy commissioner that the deceased had fallen down the stairs and the commissioner therefore concluded that the accident arose out of and in the course of the employment.

In *Irons* v. *Hause Washed Gravel and Sand Co.*, 6 *N. J. Mis. R.* 863 (workmen's compensation bureau finding), deceased was an operator of an electric conveyor. Death was caused by electric shock. Body was found on the floor of the room containing electric switches and other electric devices used in the operation of the conveyor. There were no eye witnesses to the fatality. Body showed electric burns. It was held:

"* * * If an employe is found dead and there is no evidence as to how he met his death, the court will presume it was by accident arising out of and in the course of the employment, *provided the body is found under circumstances reasonably connected with the said employment. DeFazio's Estate* v. *Goldschmidt Detinning Co.*, 87 *N. J. L.* 317, and *Muzik* v. *Erie Railroad Co.*, 85 *Id.* 129. Although the respondent contends that death was caused and due to natural causes, this, however, is not borne out by the testimony. Where the respondent seeks to avoid liability for a cause for which it is not responsible, the burden of proof is on the respondent to show such cause. *Atchinson* v. *Colgate & Co.*, 3 *N. J. Mis. R.* 451; 131 *Atl. Rep.* 921." (Italics ours.)

In *Richmond* v. *Scheidell*, 8 *N. J. Mis. R.* 468, deceased was a painter. He was found in a slumped and unconscious condition on a step ladder. He was otherwise physically

injured; fractured at the base of the skull resulting in traumatic cerebral hemorrhage that caused his death. Compensation was allowed and sustained.

In *Eureka Cereal Beverage Co.* v. *Langnase* (*Supreme Court*), 10 *N. J. Mis. R.* 322, deceased was employed as a brewer of beer. His body was found in the bottom of a tank with the ladder, used to descend in the inside of the vat, across his body. Cause of death was given as arterio sclerosis induced by shock due to a fall from the ladder. Evidence was introduced tending to show that death was due or might have been due to a heart attack as deceased was descending the ladder and which caused both the fall and the death. Compensation was sustained.

In *Dominquez* v. *Markowitz*, 12 *N. J. Mis. R.* 90; 169 *Atl. Rep.* 514, the workman was a borough marshal, employed as a watchman. He used a motorcycle and was fatally injured while traveling on the road used in passing from one section of the construction work to another. Claim was made that at the time of the accident he was pursuing a speeding automobile not in the performance of his duties as a watchman. The bureau and the Common Pleas Court of Bergen county found for the claimant. The court held:

"We have examined the evidence, *and find therein a basis of rational inference, tantamount to legal proof of the fact that decedent's death resulted from an accident which arose out of and in the course of his employment. Manziano* v. *Public Service Gas Co.,* 92 *N. J. L.* 322; 105 *Atl. Rep.* 484. This is fairly inferable from all the facts and circumstances, and we so find." (Italics ours.)

In *Tully* v. *Gibbs & Hill,* 12 *N. J. Mis. R.* 275; 171 *Atl. Rep.* 313, employe was a watchman employed to guard cables, hoist and pump beside a railroad track. Testimony was that death was due to shock. There was a heavy downpour of rain during the night. The body of deceased was found with his left shoulder in contact with a "third rail;" his right shoulder being caught under the guard of the same rail. The court, after reviewing the testimony offered as to what deceased was doing prior to or at the time he met with the accident that caused his death, said:

"From the facts and circumstances in this case we think that the deputy commissioner was justified in drawing the inference that the accident to the decedent arose out of the decedent's employment. *Muzik* v. *Erie Railroad,* 85 *N. J. L.* 129; 89 *Atl. Rep.* 248; *DeFazio's Estate* v. *Goldschmidt Detinning Co.,* 87 *N. J. L.* 317; 88 *Atl. Rep.* 549.

"When an employe, as here, is found dead from accident, and there is no evidence offered as to how the death occurred, the court will presume that the accident causing the death was one that arose out of and in the course of the employment. Here it was perfectly consistent with the performance of his duty, under the circumstances that prevailed, that the deceased should be where he was at the time of the occurrence which resulted in his death. *Zabriskie* v. *Erie Railroad,* 85 *N. J. L.* 157; 88 *Atl. Rep.* 824; *DeFazio's Estate* v. *Goldschmidt Detinning Co., supra.*"

In *Muzik* v. *Erie Railroad Co.,* 85 *N. J. L.* 129, a railroad employe was found after the train had gone out, lying some three or four feet from the rails, with his feet towards the track, having an injury to his head, and died shortly thereafter, from a broken neck. This court held:

"The Bergen County Common Pleas found that the deceased came to his death by accident, while in the railroad's employ, and in the course of it. I do not think that we can question this finding. *The facts shown clearly indicate that the deceased was struck by the train after he had given the waybills in pursuance of his duty as such employe, to the train agent, and this, of course, would be while in the course of his employment.* While it is true that there are many cases outside of the State of New Jersey holding that the claimant must prove that the applicant was injured in an accident arising out of and in the course of his employment, I do not think that the inference in this case varies the rule. See *Pomfret* v. *Lancashire, &c., Railway* (1903), 2 *K. B.* 718; 19 *T. L. R.* 460. The distinction between that case and the one at hand being the fact that there was no proof at all of the cause of the injuries resulting in death. See, also, *Nicholas* v. *Dawson,* 15 *Id.* 242; *McDonald* v. *Owner of S. S. Banana* (1908), 2 *K. B.* 926; 24 *Id.* 887; *Bender* v. *Owners*

*of S. S. Kent* (1909), 2 *K. B.* 41; 100 *L. T.* 639; *Gilbert* v. *Owners of Nizam,* 79 *L. J. K. B.* 1172."

In *DeFazio's Estate* v. *Goldschmidt Detinning Co., supra,* deceased was found lying under a train of cars, with a hole about six inches in diameter, in his abdomen. There was no proof of the accident. It did, however, "seem that the deceased had gone to his foreman in search of material and while on this trip was injured," apparently killed by a train.

In *Manziano* v. *Public Service Gas Co.,* 92 *N. J. L.* 322, the deceased was found dead in a trench which he had been employed to guard. Apparently it was one of the trenches which had been dug by defendant to locate leaks in its gas main. "The intensity and volume of escaping gas made standing on the trench or the embankment dangerous to employes." This court held that where, in a workmen's compensation case, there was proof only of the death and of the dangerous environment of the deceased, which furnished presumptive or circumstantial testimony of the manner of death, by a logical process of rational induction, based upon human experience, from which the reasonable inference of the existence of the statutory requirement was deducible, *i. e.,* that death arose out of and in the course of the employment, a conclusion, by the trial court, based upon such rational inference tantamount to legal proof of the facts, will not be disturbed.

In *Mountain Ice Co.* v. *Durkin,* 6 *N. J. Mis. R.* 1111; *affirmed,* 105 *N. J. L.* 636; deceased was found in an unconscious condition beneath a platform. This court held:

"The presence of the body, bearing injuries which would result from a fall immediately beneath the platform thirty-five feet above, from which an open door led to a room to which he had access, raises a legitimate inference that he died as a result of a fall from the platform. The deceased was a watchman; the very character of his employment would require him to enter any portion of the company's premises, where his presence might be of benefit to his employer's interest. A case in point is that of *Atchinson* v. *Colgate Co.,* 3 *N. J. Mis. R.* 451; *affirmed,* 102 *N. J. L.* 425; so is *Manziano* v. *Public Service Gas Co., supra."*

Respondent makes the contention that in each of the aforesaid cases the cause of or the instrumentality by which the injury or death resulted, is made to appear. For example, in the Musik and DeFazio cases, it was a train; in the Manziano case it was gas; in the Mountain Ice Company case it was a fall from a platform, &c. And that in addition to the known cause or instrumentality as aforesaid, there was proper proof in each case, circumstantial or presumptive, viz., based on proper deducible inferences, that the cause of the injury or death was due to a risk which was directly or indirectly connected with or incidental to the employment and therefore was held to be an accident arising "out of" the employment. Or putting it, as it is expressed in *Dominiquez* v. *Markowitz, supra,* in the evidence produced there must be found the basis for the rational inference, tantamount to the legal proof of the fact, that the decedent's death resulted from an accident which arose "out of" and "in the course of" his employment.

What is there about the hole in the hat, the soot around the wound, the finding of the body on the floor of the garage, where the deceased had a right to be, or any other testimony in the case from which a rational inference or inferences tantamount to legal proof of the fact, that under one or all of these circumstances the death of Nardone was due to a risk which he, as a reasonable person, might have contemplated and that the risk belonged to or was connected with what he as a workman had to do in fulfilling his contract of service?

Surely the injuries which the deceased received resulting in his death could not have been contemplated by him, as a reasonable person, to be incidental to the risk of his employment. The injuries which the deceased received in the course of fulfilling his contract of service, as a night watchman and furnace man, cannot be held to be (without proper proof) as incidental to the fulfilling of his contract of service.

Do our cases hold that the mere finding of the body of an employe, in or at the place of his employment and where he had a right to be, raises a presumption or rational inference

sufficient to sustain a verdict against the employer, notwithstanding that no evidence is offered to show how the death occurred and notwithstanding further, that there is no proof to show that the death was the result of a risk which the employe, as a reasonable person, might have contemplated, and which risk did belong to or was connected with the fulfilling of his contract of service? We do not understand them to so hold. For it is always the duty on the part of a claimant in a workmen's compensation case, such as here, to prove that death was caused by (a) an accident, (b) arising out of, and (c) in the course of his employment. *Bryant* v. *Fissell, supra; Dunnewald* v. *Steers, Inc. (Court of Errors and Appeals)*, 89 *N. J. L.* 601, 602. The proof, it is true, may be direct, presumptive or circumstantial, but legal proof, nevertheless, it must be.

Our analysis of the cases on this subject leads us to the conclusion that in each case where liability was imposed on the employer, and sustained, on presumptive or circumstantial evidence there is to be found circumstances which form the basis for a rational inference, tantamount to legal proof of the fact, that the accident resulting in death arose "out of" and "in the course of" the employment.

No such rational inference can be legally deduced from the proofs in the instant case. We are of the opinion that the proofs herein fail to meet or satisfy the requirements of our adjudicated cases relating thereto.

Not even the broad and liberal interpretation given by our courts to the Workmen's Compensation act can justify a judgment based on mere guess or conjecture; it must be based on legal evidence only.

Judgment is affirmed, with costs.

Justice Heher dissents.