**SOUTHWESTERN PORTLAND CEMENT CO. et al. v. SIMPSON.**

**No. 2654.**

Circuit Court of Appeals, Tenth Circuit.
April 30, 1943.

Rehearing Denied and Opinion Modified
June 19, 1943.

Pierce Rodey, of Albuquerque, N. M. (Rodey, Dickason & Sloan, of Albuquerque, N. M., on the brief), for appellants.

Edwin L. Swope, of Albuquerque, N. M. (W. A. Keleher and Theo. E. Jones, both of Albuquerque, N. M., on the brief), for appellee.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

Alice E. Simpson[1] commenced this action against the Southwestern Portland Cement Company[2] in a district court of the state of New Mexico to recover benefits under the New Mexico Workmen's Compensation Act[3] for the death of her husband, John E. Simpson. The action was removed to the United States District Court. From a judgment in favor of the claimant, the Cement Company has appealed.

In its answer the Cement Company set up two defenses (1) that Simpson's injuries were not caused by an accident arising out of and in the course of his employment, and (2) that Simpson's injuries were occasioned by intoxication and were, therefore, not compensable under the Act.[4]

The issue raised by the first defense was submitted to the jury by special interrogatory No. 1, reading: "At the time of the accident in which the decedent, John Ernest Simpson, met his death, was he performing services arising out of and in the course of his employment?" The jury answered in the affirmative.

The evidence with respect to the issue raised by the first defense is free from substantial conflict and it established these facts:

John E. Simpson was employed by the Cement Company as a cement salesman from February, 1936, until his death on September 5, 1941. He resided at Albuquerque, New Mexico. His sales territory was a section of the state of New Mexico. In performing his duties as salesman, he traveled in a Chevrolet automobile furnished by the Cement Company. His duties consisted mainly of soliciting cement purchases from dealers and contractors. He was not required to observe fixed hours of employment or a fixed schedule of travel. He was free to exercise his own judgment and discretion in covering his territory. He was a competent and successful salesman. He received a salary of $260 per month. The Cement Company reimbursed him for traveling expenses, for maintenance while away from home, and for expenditures incurred for meals, liquors and other entertainment furnished prospective customers at hotels and night clubs.

As a part of his duties, Simpson was required to attend "highway lettings," which occurred from time to time in Santa Fe, New Mexico, where the New Mexico State Highway Department received competitive bids from contractors for highway construction jobs and awarded contracts. The contractors and salesmen of products used in highway construction work usually assembled the day before the actual award of the contract at the La Fonda and De Vargas Hotels in Santa Fe. The contractors, with the assistance of the salesmen, prepared their bids and both contractors and salesmen attended the actual "letting" on the following day. Most of the salesmen and contractors congregated at the La Fonda. The salesmen gave the contractors prices on products, freight rates, and other data, and otherwise assisted the contractors in preparing their bids. During the afternoon and night preceding a "letting" there was much social intercourse and drinking of intoxicating liquor. From about noon of the day preceding the "letting" until the bids were received and the contract awarded, the salesmen were constantly on duty. Competition between salesmen was keen and it was a general practice for salesmen to withhold their final

---

[1] Hereinafter called the claimant.

[2] Hereinafter called the Cement Company.

[3] §§ 57-901 to 57-932, N.M.S.A. 1941.

[4] The second defense was predicated on § 57-908, N.M.S.A.1941, which provides that no compensation shall become due or payable from any employer for injuries or death "occasioned by the intoxication of" the employee. It was submitted to the jury by special interrogatory No. 3, reading: "Were the injuries suffered by the decedent, John Ernest Simpson, resulting in his death occasioned by his intoxication?" The jury answered in the negative. Counsel for the Cement Company admit that the jury's special verdict is supported by substantial evidence and that it is concluded thereby on this appeal.

price quotations as long as possible. It was not unusual when the bar closed at the La Fonda at midnight for the contractors and salesmen to go to night clubs in and near Santa Fe and there continue their negotiations and their social intercourse. One of these night clubs was known as the Trianon.

Simpson was required to be on duty at Santa Fe from about noon of the day before a "letting" until the contract was awarded on the following day. He was also expected to attend the Highway Department session at which the contracts were let. Simpson's primary object in attending the "lettings" was to sell cement to the successful bidder. But it was also part of his duties to promote future sales to other contractors, by assisting them in preparing their bids, furnishing them with cement prices, freight rates, and other data, and by generally creating and fostering their good will toward the Cement Company.

On September 5, 1941, a highway "letting" was to be held in Santa Fe. Salesmen, contractors, and others arrived the day before. Most of them gathered at the La Fonda. On September 4, Simpson left his home in Albuquerque, after telling his wife he was going to Santa Fe to attend a "letting." He took his typewriter, suitcase, and a brief case containing data respecting cement and freight rates and also blank contracts. He arrived at the La Fonda in Santa Fe about 1 P. M., September 4, and engaged a room. Thereafter, he appeared in the lobby of the hotel and began talking business with prospective customers. He spent the entire day and evening in the hotel fraternizing with the contractors and other salesmen, talking, drinking, and eating with them. Between 8 P. M. and 11 P. M., he had dinner in the New Mexican Room of the La Fonda. A contractor and another salesman were seated with him at the same table. Other tables were occupied by other contractors and salesmen. The salesmen and contractors moved from one table to another and carried on business negotiations. Simpson spent his evening eating his meal and mingling with the other parties present.

Between 10:30 P. M. and 11 P. M., Simpson joined Henry Thygesen, an important contractor, who had been awarded several highway contracts, James Ryan, another contractor, Roy Doty, a salesman and several others in the cocktail room. This group broke up a short time later and Simpson went to the hotel lobby. At 12:20 A. M., September 5, Doty saw Simpson in the lobby talking to three Indians who were apparently attempting to sell him some jewelry. Simpson asked Doty if he wanted to go to the Trianon with him, and Doty replied that he was going to bed. Simpson stated that he intended to remain in the lobby until some one came along who desired to go to the Trianon.

It had been Simpson's practice theretofore to contact and entertain contractors at the Trianon and there continue his efforts to promote cement sales.

At about 6:30 on the morning of September 5, 1941, Simpson was found dead in his automobile which was impacted against a corner of a building near U. S. Highway 85. His death was caused by a fractured skull and a broken leg. The automobile tracks indicated that the automobile was traveling in a southerly direction when it left the highway on the left hand side. The right front tire on the automobile was partially flat. The building where the accident occurred is located about one and a half miles south of Santa Fe and about a block and a half south of the Trianon. There was another night club south of the point where the accident occurred. Simpson's brief case, containing cement data, was found in the automobile. A typewriter, a brief case, and an unpacked Gladstone bag were found in his hotel room. His bed had not been slept in. There was no direct evidence as to what Simpson did between 12:20 A. M. and the time of the accident on the morning of September 5.

At the close of all the evidence, the Cement Company interposed a motion for a directed verdict in its behalf. The motion was denied. The trial court, in part, instructed the jury as follows: "If you find in this case that at the time of the accident, Ernest Simpson, was on his way home from a trip made for and in the interests of his employer, then you will conclude that Ernest Simpson's death arose out of and in the course of his employment. * * *"

Counsel for the Cement Company excepted thereto on the ground that there was no evidence warranting the jury in finding that Simpson was on his way to his home in Albuquerque at the time of the accident.

The Cement Company also excepted to the refusal of the court to give its requested special interrogatory No. 2, read-

ing: "Were the injuries resulting in the death of John Ernest Simpson caused by an accident arising out of and in the course of his employment?"

Section 57-906, N.M.S.A.1941, provides as prerequisites to the right to compensation that (1) the injury to or death of the employee shall be proximately caused by an accident arising out of and in the course of his employment, and (2) that at the time of the accident the employee shall be performing services arising out of and in the course of his employment.

■ It is well settled that where a salesman suffers a highway accident while traveling by automobile to or from a place where his duties require him to go, the accident arises out of and in the course of his employment.[5]

■■ The burden was upon the claimant to establish by evidence that Simpson's death was proximately caused by an accident arising out of and in the course of his employment and that the accident occurred while performing services arising out of and in the course of his employment. But when she introduced proof of facts raising a natural and reasonable inference that the accident arose out of and in the course of his employment and occurred when Simpson was performing services arising out of

and in the course of his employment, the burden then rested upon the Cement Company, it having denied those facts, to show the contrary.[6]

■ Where there is substantial evidence that the death of an employee resulted from accident and that the accident occurred during his hours of work, at a place where his duties required him to be, or where he might properly have been in the performance of such duties, the jury or other trier of the issues of fact may reasonably conclude therefrom, as a natural inference, that the accident arose out of and in the course of the employment.[7] In some of the decided cases the statement will·be found that such facts, when proven, create a presumption that the accident arose out of and in the course of the employment.[8] However, since the burden is on the claimant to prove that the accident arose out of and in the course of the employment, either by direct evidence or evidence from which those facts may be legitimately inferred,[9] we think the presumption referred to is not a legal presumption, but one of fact, that is, a natural inference drawn from proven facts.[10]

Where a salesman while traveling in an automobile suffers an accidental death, during his hours of work and at a place where

5 Ætna Life Insurance Company v. Schmiedeke, 192 Wis. 574, 213 N.W. 292, 293; New Amsterdam Casualty Co. v. Sumrell, 30 Ga.App. 682, 118 S.E. 786, 789, 790; Cook's Case, 243 Mass. 572, 137 N.E. 733, 735, 29 A.L.R. 114; Empire Health & Accident Ins. Co. v. Purcell, 76 Ind.App. 551, 132 N.E. 664, 666; United States Casualty Co. v. Superior Hardware Company, 175 Wis. 162, 184 N.W. 694, 695; Schroeder & Daly Co. v. Industrial Commission, 169 Wis. 567, 173 N.W. 328, 329; Capital Paper Co. v. Conner, 81 Ind.App. 545, 547, 144 N.E. 474, 475; Wahlig v. Krenning-Schlapp Grocer Co., 325 Mo. 677, 29 S.W.2d 128, 131.

6 Wishcaless v. Hammond, Standish & Co., 201 Mich. 192, 166 N.W. 993, 995; Papinaw v. Grand Trunk R. Co. of Canada, 189 Mich. 441, 155 N.W. 545, 547; Grant v. Glasgow Ry. Co., 1 B.W.C.C. 17.

7 Saunders v. New England Collapsible Tube Co., 95 Conn. 40, 110 A. 538, 539; Owens v. Ocean Forest Club, 196 S.C. 97, 12 S.E.2d 839, 841, 842; Capital Paper ·Co. v. Conner, 81 Ind.App. 545, 144 N.E. 474, 475; Flucker v. Carnegie Steel Co., 263 Pa. 113, 106 A. 192, 194; American

Mutual Liability Ins. Co. v. Hardy, 36 Ga.App. 487, 137 S.E. 113, 114, 115; Standard Acc. Ins. Co. v. Kiker, 45 Ga. App. 706, 165 S.E. 850, 851; Heileman Brewing Co. v. Shaw, 161 Wis. 443, 154 N.W. 631.

8 Czuczko v. Golden-Gary Co., Inc., 94 Ind.App. 47, 177 N.E. 466, 467, 179 N. E. 19; Progress Laundry Co. v. Cook, 101 Ind.App. 235, 198 N.E. 807, 808; Fisher v. City of Decatur, 99 Ind.App. 667, 192 N.E. 844, 845; Tully v. Gibbs & Hill, Inc., 171 A. 313, 314, 12 N.J. Misc. 275; Sullivan v. Suffolk Peanut Co., 171 Va. 439, 199 S.E. 504, 506, 120 A.L. R. 677.

9 Nardone v. Public Service Electric & Gas Co., 113 N.J.L. 540, 174 A. 745, 750; Dietz v. Eagle Grocery Co., 184 A. 216, 218, 14 N.J.Misc. 240.

10 See Owens v. Ocean Forest Club, 196 S.C. 97, 12 S.E.2d 839, 841; Standard Acc. Ins. Co. v. Kiker, 45 Ga.App. 706, 165 S.E. 850, 851; Capital Paper Co. v. Conner, 81 Ind.App. 545, 144 N.E. 474, 475; Saunders v. New England Collapsible Tube Co., 95 Conn. 40, 110 A. 538, 539, 540; and cases cited in Note 6, ante.

the performance of his duties may reasonably have required him to go, there is a natural inference that the accident arose out of and in the course of his employment.[11]

Simpson arrived in Santa Fe about 1 P. M., September 4, 1941. From the time of his arrival at Santa Fe until the bids were opened and the contract awarded about 11 A. M. on the following day, he was required to remain on duty. His duties were to make contacts with contractors, to furnish them with cement quotations, freight rates, and other pertinent data, to assist them in making out their bids, and to foster their good will by social entertainment. It was incumbent upon him to make and maintain these contacts wherever the contractors gathered at hotels, night clubs, or elsewhere. It was customary for the contractors, after the La Fonda bar closed, to go to the Trianon and other night clubs. Simpson was found dead in an automobile furnished him by the Cement Company at a point a short distance from the Trianon. It had been Simpson's practice to contact contractors at the Trianon and he told Doty he was going there on the night of the accident. While the automobile was traveling away from the Trianon and in the direction of Albuquerque at the time of the accident, another night club was situated a short distance from the Trianon in the direction in which the automobile was traveling at the time of the accident. Thus, it will be seen the evidence established that the accident occurred while Simpson was traveling in the automobile furnished him by the Cement Company during the hours he was required to be on duty and where he might properly have been in the performance of his duties in making and maintaining contacts with the contractors.

■ From the foregoing facts, the jury, under proper instructions, might have drawn the inference that Simpson's death was proximately caused by an accident arising out of and in the course of his employment and that such accident occurred while he was performing services arising out of and in the course of his employment.

■ However, the court in effect instructed the jury that it might find from the evidence that Simpson at the time of the accident was on his way home from Santa Fe, where he had been in the performance of his duties, and conclude therefrom that the accident arose out of and in the course of the employment. At the time of the accident Simpson was traveling on the Santa Fe-Albuquerque highway in the direction of Albuquerque. Aside from that fact, there is nothing in the evidence indicating in the slightest degree that he was returning to Albuquerque. The accident occurred a short distance from Santa Fe, where Simpson's duties required him to be. He had engaged a room at the La Fonda. He left his traveling effects in the room. His duties required him to be in Santa Fe and to remain there until the bids were opened and the contract awarded on September 5. Had he returned to Albuquerque in the early morning of September 5, it would have been necessary for him almost immediately to turn around and return to Santa Fe. The evidence disclosed no reason for him to return to Albuquerque. Every known reason impelled him to remain in Santa Fe. To draw the conclusion that he was on his way to Albuquerque at the time of the accident would be illogical and unreasonable under the evidence. Such a conclusion would rest on mere surmise or conjecture. We accordingly conclude that the court erred in giving the quoted instruction.

■ Special interrogatory No. 1 also should have covered both prerequisites to the right to compensation set forth in § 57-906, supra.

The judgment is reversed and the cause remanded with instructions to grant the Cement Company a new trial on the issues raised by the first defense.

BRATTON, Circuit Judge, is of the opinion that the judgment should be affirmed.

[11] Henry v. D. A. Odell Motor Car Co., 191 Minn. 92, 253 N.W. 110, 112; Keeler v. Sears, Roebuck & Co., 121 Conn. 56, 183 A. 20, 22; Beaver v. George W. Boyd Co., 106 Pa.Super. 24, 161 A. 900, 903; Swift & Co. v. Industrial Commission, 350 Ill. 413, 183 N.E. 476, 478; Note, 120 A.L.R. p. 688.