285 P.2d 497

Letha B. CAMPBELL, Claimant-Appellee,

v.

SCHWERS–CAMPBELL, Inc., Employer, Farmers Insurance Exchange, Insurer, Defendants-Appellants.

No. 5874.

Supreme Court of New Mexico.

June 28, 1955.

Iden & Johnson, Richard G. Cooper, Albuquerque, for defendants-appellants.

Simms & Modrall, Augustus T. Seymour, Albuquerque, for claimant-appellee.

SADLER, Justice.

The question for decision is whether plaintiff's decedent, found dead by the side of his overturned automobile alongside a New Mexico highway, came to his death as the result of injuries suffered in an accident arising out of and in the course of his employment by defendant.

The plaintiff who is the surviving wife of the decedent brought her action as claimant seeking recovery for the death of her husband under the provisions of the New Mexico Workmen's Compensation Act. The claim was based on an allegation that the husband came to his death by reason of injuries received in an accident arising out of and in the course of his employment by defendant which contributed proximately to cause such injuries and death. The jury under instructions given it by the court deliberated and returned a verdict in favor of the plaintiff upon which the trial court entered judgment accordingly. The defendant, employer, and its insurer prosecute this appeal for the revision and correction of the judgment so rendered against them. There is but little conflict in the evidence. Hence, facts not in dispute will be recited.

Lawrence Edward Campbell, the decedent, was vice-president of Schwers-Campbell, Inc., employer, a corporation. It was in the shoe business and had shoe departments in Colorado Springs, Colorado; Wichita, Kansas; Albuquerque, Santa Fe, Roswell and Clovis, New Mexico; and Midland, Texas. In addition to his duties as vice-president, the decedent was in charge of the personnel in all stores. There was a manager for each store and some of them had additional employees. The decedent resided in Albuquerque with his wife and was required to visit each of the different stores from time to time, though the occasion and duration of such visits were largely of his own choosing. In making these trips he traveled in a company owned car and observed no fixed hours of work.

On Monday, October 27, 1952, the decedent left Albuquerque at an early hour for Roswell, accompanied by one Jimmy Albens whom he was to install as new manager at the Roswell store, after checking out the old manager. Upon arrival in Roswell around noon he entered at once upon the task mentioned which occupied his time until midnight of the 27th, the date of his leaving Albuquerque. The period from midnight, October 27th and 9:30 p. m., October 28th discloses nothing concerning decedent. The record is barren of evidence indicating any intention on his part as to plans, or to show what, if anything, he did between the time of checking out the old manager at midnight, the 27th, and 9:30 p. m., the night of the 28th. Indeed, his

activities and whereabouts during this period represent a complete vacuum in the evidence.

At the last mentioned hour on the 28th of October, 1952, the body of deceased was found along the highway, a short distance from his overturned car, some 18 miles south of Roswell, near the village of Dexter. He was traveling on Highway 285, south of Roswell and apparently in attempting to negotiate a curve to the east, his car, after shearing off a telephone pole, turned over five times, killing him instantly.

The accident apparently had occurred shortly before 9:30 p. m., the hour his body was discovered by passers-by. There was neither luggage nor clothing in the car; nor a brief case. The only items found in or around the car, which was completely demolished, were a few loose papers, not identified, and a small box, four (4) inches square. Upon arriving in Roswell the decedent had registered at El Rancho Motel, where all his clothing, except what he wore, as well as his luggage consisting of a suitcase, synthetic clothing bag and shaving kit had been left and were found after the accident.

Counsel for plaintiff are quite frank in recognizing that the vital question in this case is whether or not there is sufficient evidence of a substantial character to support the verdict rendered in favor of their client. They state the decisive issues before the jury in the following language, to-wit:

"The immediate and vital question, then, is whether or not appellee has introduced proof of facts which constitute substantial evidence (1) that the death of Campbell resulted from an accident; (2) that the accident occurred during his hours of work; and (3) that the accident occurred at a place where his duties required him to be, or where he might properly have been in the performance of such duties."

Having thus presented what they conceive to be the decisive fact issues for determination of the jury, they assert that, if there be substantial evidence of these facts before the jury, then under our cases of Medina v. New Mexico Consolidated Mining Co., 51 N.M. 493, 188 P.2d 343, and Parr v. New Mexico State Highway Department, 54 N.M. 126, 215 P.2d 602, and the federal case from the 10th Circuit Court of Appeals, Southwestern Portland Cement Co. v. Simpson, 10 Cir., 135 F.2d 584, the jury had the right to infer that the accident arose out of and in the course of decedent's employment and award compensation accordingly.

There can, of course, be not the slightest doubt in the evidence about fact issue No. 1, namely, that the death of decedent resulted from accident. The finding of his body only a few feet removed from his overturned and demolished automobile

leaves the matter not open to question. If the plaintiff loses, then, it will be due to a want of satisfactory evidence on which to base an inference about the second and third issues of fact listed by her counsel as essential to recovery, more especially the third. Deeming the evidence quite sufficient, then, as to accidental character of decedent's death, we shall look to the facts in evidence to support proper inferences as to the other two issues which are so related they may be considered together.

It was adequately established that decedent traveled in a company car on irregular visits to the various stores owned by his corporate employer, of which he himself was vice-president. He was actually in charge of personnel, the hiring and firing of managers as well as employees for the various stores. When a change in managers occurred, it was his duty to visit the store involved and check out the old and check in the new manager. His visits to the stores of the company were irregular and ordinarily without advance notice. Furthermore, he was largely the architect of his own itineraries. It was a rare thing for him to have a directive from president of the company as to the need or occasion for a trip.

Thus it was that the decedent had or kept no regular hours, or to put it as some of the witnesses did, he was on 24-hour duty, or perhaps better said, he was subject to call at any time over a 24-hour period, as the exigencies of the business demanded. This fact is reflected in the testimony of the manager being checked out at Roswell to the effect that he and decedent finished the job at midnight, preceding the latter's death by accident by 9:30 p. m., the following day.

It was the practice of decedent when work was done, to indulge in a cocktail or beer before dining, and on occasions he might take a couple of drinks. However, it was an unvarying practice on his part never to take a drink while on duty, or at work. Incidentally, there was not the slightest indication that decedent had been drinking prior to his death, nor was there any liquor or evidence of it in or about the wrecked car. At the trial, counsel for defendants expressly disclaimed any intention of attempting to show decedent had been drinking or was intoxicated.

Coming now to the question of whether the accident took place at a time and place where his duties required him to be or where he might properly have been in performance of such duties. This is the third factual issue listed by plaintiff's counsel as one to be established by plaintiff and essential to recovery. Undoubtedly, this is the most difficult challenge the plaintiff is called upon to meet in the evidence. They make three separate attempts to do so.

First, they refer to the evidence that a change of managers at Midland, Texas, where the company had a store was im-

minent, and that decedent could have been enroute there following a sudden decision to make the trip. Next, evidence is referred to in the record that the company was always on the lookout for new managers by reason of frequent changes in that position and decedent had lately learned of a good prospect at Carlsbad. Hence, it is argued he might have been enroute there to confer with this prospect. And, finally, it is pointed out that a few customers residing in the Dexter-Artesia area, on several occasions following closing of the Carlsbad store some time previously, had written or telephoned decedent for shoes which he had furnished them by mail from the Albuquerque store. Thus, it is argued it is not unreasonable to infer that he might have been on the way to call on some customer following a communication from him, as had been his practice, occasionally, in like circumstances with other customers.

In none of the three cases most relied upon by counsel for the plaintiff, namely, the Simpson case, the Parr case, or the Medina case, do we find the authority needed to support the verdict rendered in the present case. The facts in the Simpson case more nearly parallel those of the case at bar than either of the other two. There, as here, the decedent employee was a salesman whose duties called upon him to do considerable traveling, which he did in a car owned by the employer. On the night of his death he was in Santa Fe where he had been all day attending highway "lettings," a part of his duties. On such occasions he did, and was expected to do, considerable fraternizing with the highway contractors and other salesmen engaged in or attending the bidding.

After decedent spent the day preceding the letting in talking to and fraternizing with the contractors and other salesmen in and about Santa Fe, he carried on at the La Fonda Hotel until approximately midnight and then proceeded in his car to the Trianon Night Club where he often entertained contractors. At 6:30 on the following morning, decedent was found dead in his automobile which had smashed into a building near U. S. Highway 85. The scene of the accident was not on the route between the La Fonda Hotel, where claimant had a room, and the night club in question, but was several blocks south of the night club on a route between the night club and decedent's home in Albuquerque.

While the court reversed a judgment in plaintiff's favor and remanded for a new trial, a result from which the defendant draws some comfort, nevertheless, before so doing, the opinion makes certain statements which counsel for plaintiff quote and argue with much vigor as direct authority in support of their position. Counsel for defendant have quoted the following language from the Simpson opinion touching burden of proof and essentials to recovery

as giving support to their position, to-wit [135 F.2d 588]:

"The burden was upon the claimant to establish by evidence that Simpson's death was proximately caused by an accident arising out of and in the course of his employment and that the accident occurred while performing services arising out of and in the course of his employment.

\* \* \*· \* \* \*

"Section 57–906, N.M.S.A.1941, provides as prerequisites to the right to compensation that (1) the injury to or death of the employee shall be proximately caused by an accident arising out of and in the course of his employment, and (2) that at the time of the accident the employee shall be performing services arising out of and in the course of his employment."

With equal confidence, counsel for plaintiff quote from the opinion of the court by Judge Phillips in the Simpson case, language as follows:

"Where there is substantial evidence that the death of an employee resulted from accident and that the accident occurred during his hours of work, at a place where his duties required him to be, or where he might properly have been in the performance of such duties, the jury or other trier of the issues of fact may reasonably conclude there-from, as a natural inference, that the accident arose out of and in the course of the employment. \* \* \*

\* \* \* \* \* \*

"From the foregoing facts, the jury, under proper instructions, might have drawn the inference that Simpson's death was proximately caused by an accident arising out of and in the course of his employment and that such accident occurred while he was performing services arising out of and in the course of his employment."

Counsel for the plaintiff in case at bar not only claim support in this language for their position but aptly remind us that in our own opinion in the Medina case, supra, we quoted approvingly in support of the position we were there taking, the first paragraph of the Phillips opinion, quoted by appellee, last above.

And this brings us to the Medina case, supra. The plaintiff here can draw but small support from our opinion in that case. The employee, there, was found dead as a result of a dynamite explosion in a mine. The principal issue in the case was whether the death was accidental, or a suicide. The factual situation varies so widely from that present in the case at bar that the decision can hardly be deemed a precedent for plaintiff's position here.

The same may be said of the Parr case, though in its facts it more nearly furnishes

an analogy than does the Medina case. The decedent was project engineer for the Highway Department, engaged on the La Plata project, the Bloomfield project, and other construction work near Bloomfield, New Mexico. There, as here, the employee, decedent, was on call 24 hours per day. Likewise, his duties called upon him to travel, which he did in an automobile furnished by the employer, over an area where highway construction jobs were under way. It was a part of his duties regularly to contact the contractors relative to construction work, and to check the safety flares to make certain that highways under construction or repair were safe for the traveling public. Perhaps no better picture of the circumstances surrounding his ill fated journey the night he was killed can be had than by the following quotation from our opinion in the case, to-wit [54 N.M. 126, 215 P.2d 605]:

"On the very night in question, only a few hours before the accident which resulted in his death, upon arriving at the Bloomfield camp from an official visit to state highway department in Santa Fe, the deceased advised one of the employees on the job of his intention to call that night on the foreman in charge of the La Plata job to ascertain when they were going to start the bridge job. It would be necessary to pass through Farmington to visit the La Plata job. Flares were maintained at each end of construction work on that job. It was his duty to see that highways under construction or repair were safe for the traveling public. We think it was not unreasonable for the court to conclude the deceased was in the course of his employment at the time he received the injuries resulting in his death. McKinney v. Dorlac, 48 N.M. 149, 146 P.2d 867; Southwestern Portland Cement Co. v. Simpson, 10 Cir., 135 F.2d 584; Doyle's Case, 256 Mass. 290, 152 N.E. 340; Souza's Case, 316 Mass. 332, 55 N.E.2d 611; Dauphine v. Industrial Accident Commission, 57 Cal.App.2d 949, 135 P.2d 644. The mere fact that while in Farmington, his presence there occasioned by the announced purpose of visiting the La Plata project, he called on his desperately ill father at the hospital a few hours before the latter's death the following morning, would not deny his trip character as in the course of his employment, if in fact, as the court's finding implies, he had resumed travel on the journey which occasioned the trip. Dauphine v. Industrial Accident Commission, supra."

As will be seen from a reading of the foregoing quotation, there was direct evidence before the court in the Parr case, from which it could find the decedent was engaged at the very time of the accident in work connected with his employment.

It left nothing to speculation or conjecture as to the nature and purpose of the journey on which decedent was engaged at time of his death. The plaintiff in the Parr case was not compelled, as here, to invite the court to speculate as to any one of three or more separate possibilities in the evidence for an explanation of the purpose of the trip on which decedent was killed.

Coming back, now, to further consideration of the Simpson case, since it is on the Phillips opinion in that case that plaintiff, in large measure, rests her claim of right to recover. We already have mentioned the fact of a reversal in the Simpson case. It is well to state the reason. The court had instructed the jury, as follows:

" 'If you find in this case that at the time of the accident, Ernest Simpson, was on his way home from a trip made for and in the interests of his employer, then you will conclude that Ernest Simpson's death arose out of and in the course of his employment. * * * ' "

It was because of the foregoing instruction, given over objection of the defendant, that a reversal was ordered. As said by the court:

"The accident occurred a short distance from Santa Fe, where Simpson's duties required him to be. He had engaged a room at the La Fonda. He left his traveling effects in the room.

His duties required him to be in Santa Fe and to remain there until the bids were opened and the contract awarded on September 5. Had he returned to Albuquerque in the early morning of September 5, it would have been necessary for him almost immediately to turn around and return to Santa Fe. The evidence disclosed no reason for him to return to Albuquerque. Every known reason impelled him to remain in Santa Fe. To draw the conclusion that he was on his way to Albuquerque at the time of the accident would be illogical and unreasonable under the evidence. Such a conclusion would rest on mere surmise or conjecture. We accordingly conclude that the court erred in giving the quoted instruction."

It is, however, other language in the opinion which, in spite of the reversal, comforts plaintiff's counsel in their contention that there was evidence to support the finding essential to recovery. At the risk of being deemed repetitious, we quote again the court's statement that, if there be substantial evidence that an employee's death resulted from accident occurring during his hours of work "at a place where his duties required him to be, *or where he might properly have been in the performance of such duties,* the jury * * * may reasonably conclude therefrom, as a natural inference, that the accident arose out of and in the

course of the employment." (Emphasis ours.)

The primary difficulty with the position of plaintiff is that there is no evidence whatever upon which to rest an inference that the accident occurred "at a place where his duties required him to be, or where he might properly have been in the performance of such duties". True enough, a new manager had been installed at Midland and it is quite possible while at Roswell he may have resolved to visit that store to check on the new manager before returning to Albuquerque. But Midland was more than 200 miles away. It would strain credulity to the breaking point to infer he was enroute to Midland, on a trip begun after 9 o'clock at night, with all his luggage left behind in a room at the motel from which he had never checked out.

Likewise, there is an entire lack of evidence from which to deduce an inference that decedent was on the way to interview former customers in the Dexter-Artesia area, or to Carlsbad to talk with a prospective manager for some non-existent vacancy in the managerial staff of the employer. It is pure guesswork, speculation and conjecture of the plainest sort to base an inference on any of these mere possibilities in the evidence.

■ Both parties recognize that the burden rests on a plaintiff in a case of this kind to show that a decedent's death was proximately caused by an accident arising out of and in the course of his employment, as specified in 1953 Comp. § 59–10–17, and that the accident occurred while performing services arising out of and in the course of his employment. 58 Am.Jur. 865, § 450; Southwestern Portland Cement Co. v. Simpson, supra; Stambaugh v. Hayes, 44 N.M. 443, 103 P.2d 640; Clower v. Grossman, 55 N.M. 546, 237 P.2d 353, 354. In Clower v. Grossman, supra, we said:

"The burden of proof is always on the plaintiff to show that the employee sustained an accidental injury in the course of and arising out of his employment. However, it is not necessary that the proof in this respect be direct, but may be shown by circumstantial evidence alone."

In Stambaugh v. Hayes, supra, being an action for damages by reason of the death of plaintiff's decedent after being struck by an automobile driven by defendant's servant, the question at issue was whether the servant was in the course of his employment at time of the collision. On sufficiency of the evidence to sustain a verdict, the court said [44 N.M. 443, 103 P.2d 645]:

"An inference is not a supposition or a conjecture, but is a logical deduction from facts proved (State v. Jones, 39 N.M. 395, 48 P.2d 403) and guess work is not a substitute therefor.'

" 'Where evidence is equally consistent with two hypotheses, it tends to

prove neither.' P. F. Collier & Son Co. v. Hartfeil, 8 Cir., 72 F.2d 625.

"* * * We might reason that it was probable he was driving back to his debit to work in the evening, as the agents did at times; or that he would not return and work in the evening after a full day's work. Either might be correct, but neither is a logical deduction from the facts proved. There are no facts proved from which the logical deduction can be drawn that he was returning to his debit to continue his work for the Insurance Company after having left his debit at 6 o'clock.

"The burden was upon the plaintiff to establish that at the time of the accident the defendant was acting in the course of his employment. If direct proof could not be made, then there must be proof of facts from which such relation between the defendants could be reasonably inferred. But here we have no such facts; the jury reached its conclusion by guesses, conjectures, or the weighing of probabilities; not by logical deductions from facts proved."

 There is not in the record before us a single fact, as distinguished from surmise or conjecture to support an inference that decedent, was "at a place where his duties required him to be, or where he might properly have been in the performance of such duties". Was he enroute to Midland? Every circumstance in evidence suggests he was not. Was he on the way to call upon an old customer in the Dexter-Artesia area? The most we can say is that this is barely possible. And the same observation applies if we take the other alternative by assuming a trip to Carlsbad to interview an unnamed prospect for a manager's post in a non-existent vacancy, even giving all the weight it deserves to testimony the company was always on the alert to find good managers for unforeseen vacancies in that position. Unless we are prepared to support a finding based upon pure guesswork this judgment can not be sustained. This we can not do. Stambaugh v. Hayes, supra; De Baca v. Kahn, 49 N.M. 225, 161 P.2d 630.

 A careful review of the testimony in the case is quite convincing there is no substantial evidence to support a finding that the injuries resulting in decedent's death arose out of and in the course of his employment. That he died of accidental injuries is not open to question. That as a traveling salesman he was on a trip away from home on a mission for his employer is conceded. But that on the fateful journey at night which brought about his unfortunate and untimely death he was engaged in a mission of any sort for his employer there can be only speculation and conjecture. There is no proof of any sort

upon which to base an inference. Lunde v. Congoleum-Nairn, Inc., 211 Minn. 487, 1 N.W.2d 606.

Other questions are raised and argued but with the conclusion there can be no recovery, it becomes unnecessary to decide any of them. It follows from what has been said that the judgment must be reversed. It will be remanded to the district court with a direction to set aside the judgment reviewed and enter another in its stead dismissing the plaintiff's cause of action.

It is so ordered.

COMPTON, C. J., and LUJAN, Mc-GHEE and KIKER JJ., concur.