NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

LILLIAN FLYNN, PETITIONER, v. GEORGE A. HORMEL &
CO., RESPONDENT.

Decided January 31, 1946.

For the petitioner, *Martin P. Devlin, Jr.*

For the respondent, *Cox & Walburg* (by *Victor C. Hansen*).

The petitioner, Lillian Flynn, seeks compensation for herself and her two minor children, alleging that her husband, Arthur Flynn, died on January 26th, 1943, as the result of injuries sustained in an accident arising out of, during, and in the course of his employment with the respondent. The facts are not in dispute and the respondent offered no proofs, it contending that the petitioner failed to establish that the dece-

dent sustained an accident within the meaning of the Workmen's Compensation Act.

It appears that the deceased was employed by the respondent as a car route salesman on a commission basis, with a $75 per week drawing account; that by agreement dated August 17th, 1942, he leased in his own name and maintained at his own expense an office in the south wing of the Warren Street passenger station of the Reading Co., and also maintained an ice box of half freight car capacity in the immediate vicinity thereof. The telephone in the office was listed in his name. The office had no heat as the steam pipes leading thereto had been cut, and deceased having obtained permission to tap a steam line in another part of the station premises, had been engaged intermittently for some time prior to the day in question, in reinstalling the pipes so removed. In order to make such steam pipe connections it was necessary to enter the loft of the station building, and the only means of access thereto was a trap door in the ceiling of the men's room, which was reached via a twenty foot ladder on the side wall. The loft was at different levels and deceased had previously taken a step ladder into the loft in order to negotiate the different levels. The door to the men's room was kept locked, the passenger agent of the Reading Co. having the key.

On January 26th, 1943, about 10 A. M., deceased obtained the key and was seen to enter the men's room. About twenty-five minutes later a crash resembling the breaking of glass was heard, and upon investigation Mr. Flynn was found unconscious on the men's room floor in a small pool of blood about four feet from the sidewall ladder. An electric light bulb and socket which had hung from the ceiling over the spot where he was lying had been ripped from the electric cord and lay shattered on the floor. The trap door in the ceiling was open and part of the step ladder extended through the trap door opening. He was taken to a hospital and attended by Dr. John H. McCullough who testified that among the multiple injuries suffered were a fractured skull and cerebral hemorrhage, and that the patient died that same day from the cerebral hemorrhage at the base of the skull, which unquestionably resulted from a fall.

It is my opinion that the hearing of a crash, the ripped electric cord, the broken glass from the electric light bulb, the ladder protruding from the open trap door, and the finding of Mr. Flynn unconscious in a pool of blood, constitute a combination of facts and circumstances which differentiate this case from *Nardone* v. *Public Service*, 113 *N. J. L.* 540; 174 *Atl. Rep.* 745, and *Armstrong* v. *Union County Trust Co.*, 14 *N. J. Mis. R.* 648; 186 *Atl. Rep.* 522, and from which the only rational inference to be drawn is that Mr. Flynn did sustain an accident resulting in injuries described, from which injuries he died.

Did this accident, which occurred during his employment, arise out of and in the course of his employment? In *Bryant* v. *Fissell*, 84 *N. J. L.* 72; 86 *Atl. Rep.* 458, it was stated that an accident arises in the course of employment if it occurs while the employee is doing what a man so employed may reasonably do within a time during which he is employed and at a place where he may reasonably be during that time, and arises out of employment when it is something the risk of which might have been contemplated by a reasonable person, when entering the employment, as incidental; and that a risk may be incidental to the employment when it is either an ordinary risk directly connected with the employment, or an extraordinary risk which is only indirectly connected with the employment owing to the special nature of employment. This expression of the purport of the words of the statute is cited with approval in *Belyus* v. *Wilkinson, Gaddis Co.*, 115 *N. J. L.* 43; 178 *Atl. Rep.* 181; *Reynolds* v. *Passaic Valley Sewerage Commission*, 130 *N. J. L.* 437; 33 *Atl. Rep.* (2d) 595; 20 *N. J. Mis. R.* 74; 24 *Atl. Rep.* (2d) 531.

The respondent contends that the decedent was not required to rent an office to perform the service for which he was employed as the business could have been conducted from his home, and that the renting of the office was personal to him and in no way connected with his employment. True, the contract between the respondent and the deceased is silent as to an office, but what does the evidence disclose and what rational inferences may be drawn therefrom with respect to

the remainder of its contention? His average weekly earnings for the six month period preceding the accident were stipulated to be $181.47. The rates of commissions ranged from "5c cwt" to "75c cwt," with no stated amount on carload lots, but depending on price and circumstances, plus 25 per cent. of the net profit of the territory, so it is obvious that the deceased transacted a considerable volume of business. It also appears that products were shipped by the respondent to the office address, sometimes in carload lots, consigned either to him, to the respondent, or to the respondent in care of the deceased; and that he, in accordance with the contract, engaged a trucker with the approval and at the expense of the respondent to make delivery of the products to his customers. Even though deceased might have been able to conduct his employer's business from his home, when the volume of business transacted, and the records, accounts, correspondence and files necessarily attendant therewith, and the actual use to which the office was employed, are considered, can it fairly be said that the establishing of the office was in no way connected with or incidental to the fulfillment of his contract of service? I believe the more rational inference to be that the maintenance of the office expedited the transaction of the business the deceased was engaged to perform and rendered more efficient his services to his employer and to his customers, as it would seem irrational to surmise that deceased would personally assume the obligations of an office, thereby decreasing his net earnings, were it not in expectation of better service to his clientele and of increased sales with resultant financial gain to him and additional profits to his employer. I am also of the opinion that the use of this office for the transaction of the business of the respondent, for the mutual benefit of the respondent, the deceased and his customers, with the knowledge and acquiescence of the respondent is tantamount to an authorization to so employ the same (*Martin* v. *Hasbrouck Heights Building and Loan Association*, 132 *N. J. L.* 569; 41 *Atl. Rep.* (*2d*) 898). A review of all the factors to be considered leads me to the conclusion that the maintenance of the office by the decedent grew out of and was connected with the reasonable fulfillment of his

contract of service and was reasonably incidental to the nature of his employment.

It has been held that in determining whether a mishap constitutes an accident within the meaning of the statute, an element to be considered is the purpose or motivating influence of the employee in performing the particular act, as may be reasonably inferred from the nature of the employment, the conditions incidental thereto and the circumstances surrounding the actual happening. *Wettstein* v. *Whitall-Tatum Co.,* 127 *Atl. Rep.* 323; *Glynis* v. *Wright,* 122 *N. J. L.* 147; 4 *Atl. Rep.* (*2d*) 516. It seems to admit of no argument that a heatless office in the month of January is not conducive to either efficiency of operation or facility of business. Nor is it illogical to infer that such probable continued disruption of the usual office routine would result not only in impairment of customary service to the clientele of the deceased, but also in curtailment of sales, with consequent loss in commission to him and and in profits to his employer. I do not believe that the deceased attempted to make the steam pipe connections for the sole purpose of his own comfort. On the contrary, I am of the opinion that the more reasonable inference to be drawn is that the furtherance of the interest of his employer's business was a contributing factor in impelling the deceased to attempt the fatal act. It is common knowledge that at the time of this fateful mishap all mechanics were being urged to devote their increased effort to the production of more war materials, and the services of such workmen as were available for private enterprise were exceedingly difficult to procure. This exigency strengthens my opinion that the undertaking of the act by the deceased was a risk reasonably incidental to the nature of his employment, and within the definition stated in *Bryant* v. *Fissell, supra.* The requirements of the statute have been met if it appears that the employment is one of the contributing causes without which the accident which actually happened would not have happened. *Reynolds* v. *Passaic Valley Sewerage Commission, supra.*

Upon a careful consideration of all the elements presented, it is my conclusion and I find that the decedent, Arthur

Flynn, sustained an accident on January 26th, 1943, arising out of, during and in the course of his employment with the respondent resulting in personal injuries, of which the respondent had due notice, and which said injuries caused his death on January 26th, 1943; that the decedent left him surviving the following persons wholly dependent on him, namely: his widow, the petitioner, Lillian Flynn; a son, Thomas A. Flynn, born May 7th, 1929; and a daughter, Patricia Ann Flynn, born October 10th, 1935; that the average weekly earnings of the decedent upon which the compensation rate is to be computed is $181.47; that the petitioner, Lillian Flynn, paid funeral expenses of the decedent in excess of $150 and is entitled to the statutory funeral allowance, and is also entitled to reimbursement of medical expenses in the last illness of the decedent, which I find to be necessary and the amounts thereof reasonable.

It is therefore, * * * ordered that judgment be entered against the respondent, George A. Hormel & Company.

\* \* \* \* \* \* \*

R. WAYNE KRAFT,
*Deputy Commissioner.*